# Hanover Junction and Susquehanna Railroad Co. *versus* E. Burd Grubb and Paris Haldeman, doing business as E. Haldeman & Co.

1. After the approval of an Act of Assembly incorporating a company, conditional subscriptions to the capital stock of the company are valid, and this though made before letters patent are issued, the company having afterwards fulfilled conditions necessary to their issuance.

2. It may be shown by the acts and declarations of the party making a conditional subscription that there has been a release or waiver of the conditions, the fulfilment of which entitled the company to a recovery at law, and it is error to refuse testimony of such character.

3. Where the act of incorporation of a railway company provided that the minimum capital should be 5000 shares of $50 each, with the privilege of increasing, and that it might be subscribed for or disposed of "in whole or in part, from time to time, as the board of directors may think proper," and

clothed the company with full powers of a corporation upon a subscription of ten per centum of its capital stock and payment of one dollar per share, it is not necessary that the whole amount of the minimum capital should be subscribed to enable the company to recover from subscribers.

4. Where the condition of a subscription of stock was that the amount thus subscribed should be devoted to the building of a designated portion of the railway and paid when the sum of $100,000 shall have been subscribed for that purpose, and the act of incorporation provided that subscriptions may be valid, by the party making the same, on the payment of one dollar to the commissioners for each share for the use of the company ; and when ten per centum of the capital stock shall have been subscribed and one dollar paid on each share, letters patent should issue, such conditional subscription being within the power of the corporation to take, the stock contract, with the loss of its absolute character, lost the incident of partial payment, and such partial payment is not necessary to enable the company to recover.

5. Any cause which may work a forfeiture of the charter of a company is not the subject of inquiry collaterally, and is not matter of defence to an action brought by the company upon a subscription to the capital stock.

May 3d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Writ of error from the Court of Common Pleas of *Lancaster county :* Of May Term 1876, No. 77.

This was an action of assumpsit brought by the Hanover Junction and Susquehanna Railroad Company, against E. Burd Grubb and Paris Haldeman, doing business as E. Haldeman & Co., by summons issued July 21st 1874, upon a subscription made by Paris Haldeman, on the 12th of October 1872, of 400 shares of stock in his firm's name, and for the firm, the authority to do which was not disputed.

The Act of Assembly by which the plaintiff was incorporated, approved the 28th of March 1872, conferred all the powers necessary to construct, equip, use and manage the railway, and branches to be by them constructed, with capital stock of 5000 shares of $50 each, * * * to be subscribed for or disposed of in whole or in part from time to time as the directors deem proper, with power in the stockholders to increase the same from time to time, not to exceed 10,000 shares, * * * and the company may issue bonds in a sum not less than $100, for such sum as they deem expedient, and to secure the same by mortgage on their property and franchises.

They had power to locate and construct their railway, with single or double track, beginning at a point at or near Hanover Junction in York county, extending to the west bank of the Susquehanna river in York county ; to build a bridge across the Susquehanna, to connect with any other railroad, to extend their railroad on the west side of the river to said bridge, and across on the same to points of annexion.

Subscriptions may be valid by the party making the same on payment of one dollar to the commissioners for every share subscribed ; when ten per centum of the capital stock, as provided by

the act, was subscribed, and one dollar paid on each share, letters patent would be granted, as provided by sect. 2, Act 19th February 1849.

They might construct branch roads, not exceeding ten miles in length, to connect with other roads or to cross at grade.

In respect to its construction of roads, branches and extensions, it was placed under the Act of 19th February 1849, except as otherwise provided in their act.

On the 12th of September 1872, one of the corporators resigning, Paris Haldeman was elected, and he accepted the position. On the same day he, with Messrs. Watts & Hiestand, were appointed a committee to solicit subscriptions in Marietta, Lancaster county, and vicinity. Haldeman & Co. had two furnaces in Lancaster county, near Marietta.

A subscription book, marked No. 1, recited the act of incorporation as authorizing the construction of a road in York and Lancaster counties, the capital stock as fixed at $250,000, ten per centum of which must be subscribed, one dollar per share paid thereon, before letters patent and legal existence, and that the subscribers desiring to carry it out in good faith, and at the earliest moment, agreed to pay for every share, as found therein affixed to their names, the sum of $50, in such manner, as the directors designated; then, as citizens of Marietta and vicinity, they subscribed on the following condition:—

"That the amount thereby subscribed shall be devoted to the building and equipping of the extension of the Hanover Junction and Susquehanna railroad, according to the survey made by the Philadelphia and Reading Railroad Company, the same having been adopted at the last meeting of the Hanover Junction and Susquehanna Railroad Company, and that there should be a first class station at Marietta; * * * the said subscriptions shall only be paid when the sum of $100,000 shall have been subscribed for this purpose by citizens residing at or near the line of the said extension in Lancaster county."

The court below, Livingston, P. J., directed a nonsuit, which appeared to be based upon the following propositions submitted by the defendants, no opinion having been filed.

1. The directors had no authority to make calls, for the reason that there were not $100,000 subscribed, in compliance with the conditions under which Mr. Haldeman's subscription was made.

2. Because there never has been, and there is no proof of there having been, subscribed to the capital stock of the company 5000 shares of $50 each, in all $250,000.

3. Because there was not $1 per share paid on Mr. Haldeman's stock at the time of subscribing, nor at any other time.

4. Because it appears from the testimony that this call was made to carry out what witness calls the eastern division of this road, between

Landisville and Marietta, which was in reality an extension of the main line authorized from Hanover Junction to the Susquehanna, no part of which had been made or put under contract.

5. Because the provisions of the Act of 1849, embraced in the charter of this company, declare that if the main line of this road is not commenced within three years from its date, the charter shall be null and void; there having been no such commencement, no call can be made.

The plaintiff contending that so far as these objections to payment affected the franchise of the corporation or worked its forfeiture, they could not thus be inquired into collaterally, offered to show that so far as they were sustained by the conditions of the subscription, they were waived by the defendants, the rejection of which constituted the first eleven bills of exception. The 12th and 13th were to the direction of a nonsuit.

In the subscription book No. 1, subscriptions to the amount of $79,200 were made.

A subscription book No. 2 was made unconditional in its terms, dated December 30th 1872, for 600 shares, and January 4th 1873, for 3 shares, and one dollar paid on each share, upon a certificate of which, it being one-tenth, as required by the act, letters patent issued, dated December 30th 1872.

Four hundred shares of these subscriptions were transferred to Subscription Book No. 1. Haldeman had subscribed 50 shares in No. 2, with the understanding that they should not be considered additional to the subscription of 400 in book No. 1. He paid $50 on this subscription.

There had been also transferred into book No. 1, subscriptions from book marked N, of 30 shares, conditioned that the eastern division should be built on the line finally adopted, and three shares subscribed in No. 2, after the letters patent issued; and at this time the subscriptions in the books of the company actually amounted to $108,850. To obviate the objection that $100,000 had not been subscribed in compliance with the conditions of No.1, upon which the 400 shares of Haldeman had been subscribed, the plaintiffs offered evidence of what was said by Haldeman, while preparing a certificate for letters patent, about the subscription mentioned in the certificate and recited in the letters patent afterwards, as being considered part of the $100,000 subscription mentioned in the subscription of Haldeman & Co., of 400 shares; that Haldeman, at or about the time of preparing the certificate of letters patent, stated and agreed that the condition contained in the subscription book No. 1, should be taken and considered to be altered and modified, so that if the number of shares appearing in that book to have been subscribed, with the number of shares mentioned in the certificate should together amount to $100,000, that would be a sufficient compliance with the condition; that in the

[Hanover Junction, &c., Railroad Co. *v.* Haldeman.]

month of December 1872, Haldeman & Co. waived the condition that $100,000 should be subscribed, and offered all three books in evidence, with evidence to show that Haldeman agreed that if the subscriptions in No. 1 and No. 2 amounted to $100,000, the condition in No. 1, as to him, should be considered complied with.

The plaintiff also offered to prove that all the funds of the corporation, except the portion expended on the west side of the river, had been expended in the construction of this railroad from Marietta to the connection with the Reading and Columbia railroad on the east side; that the company let the contract for the construction of the eastern end of this road, from near Landisville to Marietta, and under that contract constructed over six miles of the road; that at the time of the letting of said contract, the company agreed to build the eastern end first, and appropriate the subscriptions in the books 1, 2, and N, for the construction of the eastern end, east of the Susquehanna; that the shares in the letters patent were agreed by defendant at the time of their subscription, and the making of the certificate to be additional to those in No. 1, and were to be applied to the construction of the eastern division from the Reading and Columbia railroad to Marietta; that the company were largely in debt and had issued bonds under mortgage to a large amount, which debt was incurred in the construction of the eastern division between Marietta and the junction with the Reading and Columbia railroad, and the bonds had been issued, applied and paid out for the same purpose, which debt cannot be paid except by collection of the subscriptions made for the construction of that part of the road; that at the meeting on December 3d, the defendants consented to the change that the cost of constructing the proposed new route would be some $50,000 less than the old route, which was stated in Haldeman's presence and which he agreed to.

These offers were all rejected by the court below, and were comprised in the first eleven bills of exception.

The offers were classed to meet the conditions upon which the subscription No. 1 was made, and upon which recovery was sought—that the amount subscribed shall be devoted to building of the extension of the Hanover Junction and Susquehanna railroad according to the survey made by the Philadelphia and Reading Railroad Company, which had been adopted at the last meeting of the Hanover Junction and Susquehanna Railroad Company, and that they should only be paid when $100,000 had been subscribed for this purpose by the citizens residing at or near the line of the said above extension in Lancaster county.

The conditional subscription No. 1 was made after the company had been incorporated by the Act of Assembly, and before the subscription No. 2 had been made upon which the letters patent issued, and the main point of controversy was whether there had

been a waiver on the part of the defendant of the condition that $100,000 should be subscribed by the addition to it of the subscription No. 2, and whether such waiver could be shown. The court below held, by its refusal to admit the testimony, that such waiver could not be shown.

*James Ryon, G. M. Dallas, George Nauman, P. D. Baker* and *W. U. Hensel,* for plaintiffs in error.—Waiver may be proved by words, writings, acts, even silence : Shaw *v.* Turnpike, 2 P. & W. 461. The defendants had agreed when $100,000 were subscribed in two books they should be liable ; had encouraged fellow directors and stockholders to build the road in the belief that they were liable, the company agreeing to appropriate more than $100,000 to the building of their part of the road ; had induced the contracting of a large debt for that purpose ; and Haldeman as director had voted for a resolution to place the road from Landisville to Marietta under contract as soon as subscription to stock amounted to $100,000 ; they were therefore estopped from asserting the $100,000 were not subscribed — for even if fraudulently induced to subscribe, these facts, with their other acts, would have been evidence against them : Ogilvie *v.* Insurance Co., 22 How. 380.

1. No authority to make calls because the conditions upon which $100,000 were subscribed were not complied with. Being before letters patent the conditions were void, and the subscription therefore was absolute : Bavington *v.* Railroad Co., 10 Casey 362 ; Bedford Railroad Co. *v.* Bowser, 12 Wright 34 ; Railroad Co. *v.* Biggar, 10 Casey 455 ; Pitts. & Con. Railroad Co. *v.* Stewart, 5 Wright 58. Haldeman could not make this defence after attending a meeting of stockholders, voting on his 400 shares for a resolution recommending president and directors to put the road from Landisville to Marietta under contract as soon as subscription to stock amounted to $100,000 ; attending meeting of board, noting the amount of stock to be $60,000, and declaring that when $100,000 are subscribed he had a man to take $100,000 of 7 per cent. bonds ; examining the contract let between those places ; hearing a resolution passed at a previous meeting which declared $100,000 had been raised, and having been appointed and serving on a committee to assure Mr. Gowen that $100,000 had been subscribed : Hays *v.* Pitts. & Steub. Railroad Co., 2 Wright 89.

2. That the full amount, 5000 shares, should be subscribed under this charter not necessary : Minor *v.* Mechanics' Bank, 1 Pet. 84 ; Railroad Co. *v.* Chapman, 21 Am. Law Reg. 80 (N. S., vol. 12) ; Caley *v.* Philadelphia & Chester Railroad Co., 2 Weekly Notes 313 ; Plankroad Co. *v.* Thatcher, 11 New York (1 Kern.) 107 ; United States Digest 1874, 223, pl. 22 ; Reese *v.* Bank of Montgomery, 7 Casey 78 ; Curry *v.* Scott, 4 P. F. Smith 270.

3. One dollar per share had not been paid. Turnpike *v.* Henderson, 8 S. & R. 219, has not been followed except where require-

ment of the act was the same. Corporation may take subscriptions without payment : Plankroad *v.* Brown, 1 Casey 156 ; Commonwealth *v.* West Chester Railroad Co., 3 Grant 201 ; Lake Ontario Railroad Co. *v.* Mason, 16 N. Y. 451. Estopped by subsequent acts as corporator and director : Garrett *v.* Dillsburg & Mechanicsburg Railroad Co., 2 Weekly Notes 63 ; Grayble *v.* Turnpike Co., 10 S. & R. 272 ; Ryder *v.* Alt. & Sang. Railroad Co., 13 Ill. 516 ; Highland Turnpike Co. *v.* McKean, 11 Johns. 98.

4. The call was for the purpose of building extension, the main line not having been touched. Defendants are estopped by their acts, cases cited *supra* ; Plankroad Co. *v.* Brown, 1 Casey 156 ; Railroad Co. *v.* Stewart, 5 Wright 58 ; Clark *v.* Mon. Nav. Co., 10 Watts 364 ; Bavington *v.* Railroad Co., 10 Casey 364 ; Hayes & Black *v.* Railroad Co., 2 Wright 89 ; Railroad Co. *v.* Bowser, 12 Id. 34 ; Railroad Co. *v.* Johnson, 30 N. H. 407 ; Railway Co. *v.* Lacey, 3 You. & Jer. 86 ; Crossman *v.* Ferry Bridge, 2 Casey 71. Forfeiture for the state alone : Commonwealth *v.* Pittsburgh, 5 Wright 282 ; Coil *v.* Pitts. Fem. Coll., 4 Id. 439 ; Buck Mountain Coal Co. *v.* N. & C. Co., 14 Id. 91 ; Sparhawk *v.* Union Passenger Co., 4 P. F. Smith 401 ; Cumberland Valley Railroad Co.'s Appeal, 12 Id. 227.

5. Under Act of 1849, the main line not commenced within three years from its date, charter void. Some work had been done on the main line. Under the act the part built was as much the main line as any other. Charter cannot be attacked collaterally : Cochran *v.* Arnold, 8 P. F. Smith 404, and cases cited *supra.*

*Thomas E. Franklin, George M. Kline, O. J. Dickey, H. M. North* and *S. H. Reynolds,* for defendants in error.—1. The minimum capital must be subscribed in stock before recovery : Redfield on Railways, section 18, p. 7, section 51, p. 175 ; Green's Brice's "Ultra Vires," p. 105 ; Littleton Manufacturing Co. *v.* Parker, 14 N. H. 543 ; Contoocook Valley Railway Co. *v.* Barker, 32 Id. 363 ; N. H. C. Railroad Co. *v.* Johnson, 10 Foster 390 ; O. & L. Railroad Co. *v.* Veazie, 39 Maine 571 ; Penobscot Railroad Co. *v.* Dummer, 40 Id. 172 ; Same *v.* White, 41 Id. 512 ; Gray *v.* Portland Bank, 3 Mass. 364 ; Prop. N. Bridge *v.* Story, 6 Pick. 45 ; Salem Mill Dam Co. *v.* Ropes, 9 Id. 187 ; Central Turnpike Co. *v.* Valentine, 10 Id. 142 ; S. Branch Railroad Co. *v.* Gould, 2 Gray 277 ; T. & G. Railroad Co. *v.* Newton, 8 Id. 596 ; C. & W. Springfield Bridge Co. *v.* Chapin, 6 Cush, 50 ; W. & N. Railroad Co. *v.* Hinds, 8 Id. 110 ; Atlantic Cotton Mills *v.* Abbott, 9 Id. 423 ; Lex. & W. Cam. Railroad Co. *v.* Chandler, 13 Met. 311 ; Harlem Canal Co. *v.* Seixas, 2 Hall 504 ; Same *v.* Spear, 2 Id. 510 ; R. & W. Plankroad Co. *v.* Wetsel, 21 Barb. 56 ; Bend *v.* Susquehanna Bridge Co., 6 Har. & Johns. 128 ; Hughes *v.* Antietam Manuf. Co., 34 Md. 316 ; Haun *v.* M. & J.

G. Road Co., 33 Ind. 103 ; Hain v. N. W. G. Road Co., 41 Id.
196 ; Fox v. Allensville Co., 46 Id. 31 ; Shurtz v. Schoolcraft
Railroad Co., 9 Mich. 269 ; P. & R. I. Railroad Co. v. Preston, 35
Iowa 115.   2. That $1 per share had not been paid on the shares
at the time of subscribing.   3. No power to make calls, as the
$100,000 had not been subscribed.   4. No part of the main line
had been put under contract.   5. Work had not been commenced
within three years.

Mr. Justice GORDON delivered the opinion of the court, May
29th 1876.
The subscription of the defendants, to the stock of the plaintiff's
road, was properly treated as conditional.   By their contract they
obligated themselves to pay only when the subscriptions amounted
to one hundred thousand dollars, and, by the same contract, the
moneys so raised were to be applied exclusively to the building and
equipping the proposed extension as surveyed by the Philadelphia
and Reading Railroad Co.   These subscriptions were made after
the approval of the Act of March 28th 1872, by which this com-
pany was incorporated, and under which it was organized.   It fol-
lows, that that class of cases, of which Bavington v. The Pittsburgh
and Steubenville Railroad Co., 10 Casey 358, is a representative,
does not apply to this controversy, for we have here an existing cor-
poration clothed with sufficient power to make any contract which it
may deem proper for its own welfare ; hence, the governing cases are
those of which The Pittsburgh and Connellsville Railroad Co. v.
Stewart, 5 Wright 54, is a type.   It is true, the plaintiff was to have
its letters patent only when ten per centum of its capital stock had
been subscribed, but these letters were not essential preliminaries of
the company's organization, for that had been effected by the act
itself, but were rather ancillary and supplemental to it.
   Undoubtedly, even in this case, these letters could not have been
obtained except upon the exhibition of absolute subscriptions to the
stock of this company, equal to ten per centum of its capital, and
upon which one dollar per share had been paid ; but this was done,
and the patent obtained ; thus this corporation was clothed with all
the powers necessary to accomplish the object of its creation.   As
the company was only in a situation to demand payment, when the
conditions in the contract with the defendants had been fulfilled, it
was incumbent on it to show, either the accomplishment of these
conditions, or a release or waiver of them by the parties in interest.
Now, whilst the plaintiff neither did nor proposed to prove a strict
fulfilment of that stipulation in the agreement, which provided that
the subscription should be paid only when the sum of one hundred
thousand dollars had been subscribed, nevertheless, much testimony
was given to show that Paris Haldeman, who subscribed for the firm
of which he was a member, by his acts and declarations, did waive

[Hanover Junction, &c., Railroad Co. *v.* Haldeman.]

the performance of the above-named stipulation. This testimony should have been submitted to the jury. From the evidence, it appears, that the company has expended much money upon the very branch road, for the building of which, this subscription, among others, was made, and this would form a consideration sufficient to support a waiver of the condition, if the jury should find such waiver was made. To this end, also, the offers of evidence, as set forth in the plaintiff's specifications of error, numbered from one to eleven inclusive, should have been admitted, for they were all designed to show that which was pertinent to the plaintiff's case, to wit, such acts and declarations of Haldeman as would estop him and his firm from setting up the condition to defeat the plaintiff's claim, and also what, in connection with this, was equally material, the acts and expenditures of the company in the letting and construction of that part of the road, to promote which these conditional subscriptions were made. Upon what theory the court acted, in directing the entry of the judgment of nonsuit, we know not, as no opinion was filed; but we suppose that that theory is embraced in one of the several points made in the argument for the defence as submitted to us. We will review them seriatim. They are, 1. That as the act of incorporation provides for a minimum capital of $250,000, and as that amount has not been subscribed, the plaintiff is not qualified to enforce the subscriptions now made. Much learning and research have been displayed, by the counsel for the defence, in the collection of authorities in order to fortify their case. We are, however, saved the trouble of reviewing them from the fact that they are not applicable to this controversy, for, as the act of incorporation is the supreme law of the case, we must follow its terms. That instrument provides, that the capital stock of 5000 shares, of fifty dollars each, may be subscribed for or disposed of, "in whole or in part," from time to time, as the board of directors may think proper. This, certainly, empowers them to contract for the sale of *part* of their stock, and, if they may make a contract, surely it must be implied that they may enforce such contract when made, otherwise it would involve the absurdity of the grant of a power that could not be executed. In this connection it may be pertinent to inquire why is this company, by the fourth section of the act, clothed with the full powers of a corporation, upon a subscription of ten per centum of its capital stock, if, notwithstanding, it must remain at a dead lock until the whole of that stock is disposed of? What does this grant of plenary power mean if it cannot be exercised? To resolve these questions on the theory of the defence is quite impossible. But if we concede that the directors have the power to dispose of and collect the money for so much of the company's stock as they may find market for, and, from the proceeds, put their road in such a state of forwardness as that they may mortgage it for the money necessary for its completion and equipment, the statute becomes clear and unambiguous and its wisdom apparent.

[Hanover Junction, &c., Railroad Co. v. Haldeman.]

2. The argument here presented is, that the plaintiff cannot enforce the payment of this subscription because one dollar per share was not paid thereon at the time it was made. But if this subscription is conditional, as the defendants contend it is, how is it that one dollar per share became payable absolutely? Certainly nothing of that kind is found in the contract, and the power of the company being ample to make such contract, it follows that neither party can insist upon anything not found in it, and the converse is also true, that either party can insist upon the performance, by the other, of what is found in it. This contract might have been, as was the case in the Railroad v. Stewart, payable in materials to· be delivered at a future period, and then, we may presume, it would not have been contended that one dollar per share was payable in cash. But we cannot see that the principle is altered by the fact that the contract is for money wholly payable on the happening of some future contingency; both are conditional, and *pari ratione*, if the one be good so is the other. The error consists in the supposition that the company could not receive subscriptions wholly conditional, but that they must be in part absolute; but as the partial payment was to be made only on the absolute stock taken to secure the patent, it follows that when the stock contract lost its absolute character, it also lost the incident of partial payment, for, under the act, the one is necessarily dependent on the other.

The third point we pass over as involving questions of fact upon which the jury must pass; only saying that if the company cannot show to the satisfaction of that tribunal, that Haldeman agreed that all the subscriptions, absolute and conditional, might be considered in making the sum of one hundred thousand dollars, or that he waived, as already stated, by his acts or declarations, or by both together, that condition annexed to the contract, it will not be entitled to the verdict.

The fourth and fifth points of the argument for the defendants raise the question as to the validity of the plaintiff's charter. The allegation is, that the charter has lapsed through the malfeasance or misfeasance of the company since the bringing of this suit. To support this, it has been shown that the plaintiff had confined its operations to one of its branches, and that it has done little or nothing upon its main stem, hence, it is argued that as there has been no bonâ fide commencement of the principal improvement within the period of three years, as prescribed by the Act of 1849, to the provisions of which this corporation was made subject, the charter, by the terms of that statute, has become null and void, and that, therefore, this company is not in a condition to maintain this or any other suit. We are not prepared to adopt this view of the case. Granted that the plaintiff has done that in consequence of which its charter may be forfeited, nevertheless we cannot, in this collateral proceeding, inquire into such matters. As was said by Justice

[Hanover Junction, &c., Railroad Co. *v.* Haldeman.]

Rogers in Irvine *v*, The Lumbermen's Bank, 2 W. & S. 204, ".If there be anything settled beyond all cavil or controversy, it is that the violation of a charter of incorporation cannot be made the subject of judicial investigation in a collateral suit." McCully *v.* The Railroad, 8 Casey 25, has been cited as overruling the above-named and cognate cases. If, however, such were the intention, Mr. Justice Woodward, who delivered the opinion in that case, adopted an unfortunate method of expressing himself when he said, "It is not only true as asserted in that case" (Irvine *v.* The Bank), "that the legality of an existing corporation cannot be inquired into collaterally, but, as has been held in many cases, the inquiry when directly made, can only be initiated by the attorney general or some other prosecutor who represents the people." That case turned upon questions wholly different from those found in the present suit. Not only had the Pittsburgh & Connellsville Railroad Company not commenced operations within the period prescribed, but it had made no calls upon its stock subscriptions within six years; furthermore its project was formally abandoned, and the money of many of the subscribers who had paid was returned to them. On these facts it was held, firstly, that the company was bound, from analogy to the Statute of Limitations, to call in payments on its stock subscriptions within six years after their date or a presumption of abandonment would arise. Secondly, that all the facts taken together warranted the conclusion of an actual abandonment. In the present case it is not pretended that there has been any default of the company plaintiff, except that it has done its work upon the branch, for the making of which the defendants stipulated in their subscription, instead of upon the main line, but this, so far as the present inquiry is concerned, is no default at all.

The judgment is reversed and a *venire facias de novo* is awarded.