# In the Matter of the Division of Juniata Township.

The Act of 14th March 1857, is prospective only; and did not affect cases in which a report of commissioners in favour of the division of a township, had been previously filed, and confirmed *nisi*.

CERTIORARI to the Quarter Sessions of *Blair county.*

At April sessions 1856, the petition of sundry inhabitants of Juniata township was presented to the court below, praying for a division thereof. Commissioners were appointed, and on the 26th February 1857, their report, in favour of a division, was confirmed *nisi;* and, on the 19th June 1857, no exceptions having been filed, the report was confirmed absolutely.

In the mean time, the legislature passed the Act of 14th March 1857, *Brightly's Purd.* 1219; and this writ was sued out to reverse the proceedings of the court below. It being contended, that the confirmation of the report of the commissioners, after the passage of the Act of 14th March 1857, was erroneous.

*Calvin* and *Banks,* for appellants.

*Hammond,* for the appellees.

The opinion of the court was delivered by

LOWRIE, C. J.—It is so contrary to the ordinary course of all regular judicial business, that reviewers should be appointed two terms after the proceedings for the division of a township have been finally confirmed, and perhaps after the township has been fully organized, that it is impossible to avoid thinking that the Act of 26th April 1854, *P. L.* 489, was slipped through the forms of legislation without being noticed. Its very strangeness would require that it should be narrowly watched in practice, and we do not see that it affects this case.

This proceeding was confirmed *nisi,* on the 26th February 1857; which means that it stands confirmed, unless objections be presented according to rule. No such objections were filed; but on the 14th March 1857, an Act of Assembly was passed, apparently a general law, declaring that "when a return has been made favour-

[In the Matter of the Division of Juniata Township.]

able to a division, the court shall order a vote of the qualified electors of the township to be taken on the question of the division thereof." It does not appear that such an order was asked for; but on the 27th January 1858, the case was brought here by *certiorari*, to reverse the final confirmation, entered on the 19th June 1857, on the ground that it is forbidden by the Act of 14th March.

We do not presume that this act was procured for this case, else it ought to have been insisted on in the court below. We presume that it was intended as a general rule of future practice, and therefore we must read it in the future perfect tense, instead of the perfect—" after a return shall have been made"—and then it applies only to future returns. Reading it literally as written, it would apply only to past ones, and would throw open all orders heretofore made for the division of townships; for it makes no exception of cases where the court has acted on the return.

Does the act mean to set aside the conditional confirmation already made by the court? Reading it as we feel bound to do, it does not; and we cannot suppose otherwise without the disrespectful assumption that the legislature descends to the business of direct peddling in the little details of legal practice, that belong to the execution of the law, and that are regularly committed to other hands. All bodies, public and private, and all offices, trades, and occupations, have their own methods of practice, and the business committed to them cannot be well done, if others be continually interfering to change the methods.

No objections having been filed, this confirmation became absolute of course, and it was right to enter it. We do not feel bound to interfere with it; and after so long delay, it might be very injurious to the public interests to do so. We must read the law consistently with the ordinary principles of legislation, so that it shall not amount to a reversal of judicial acts. Then, at the very least, it must read—" after a return has been made and no further proceedings had." But we think it ought to be read as entirely future in its meaning. It was common sense that dictated the old Roman law that prohibited statutes from being interpreted as affecting past or current affairs, unless they were expressly named —*nisi nominatim, et de præterito tempore, et adhuc pendentibus negotiis cautum sit: Cod.* 1, 14, 7. And the same common sense declares the same law still.

Order affirmed at the costs of the plaintiffs in error.