## Washabaugh *et al. versus* Entriken.

The occasional cutting of timber and boiling of sugar on the land of another, by the occupier of an adjoining tract, and the extension of his lines so as to include a small portion of the meadow-land, is not such a possession as will give title under the statute of limitations.

Washabaugh *v.* Entriken, 10 *Casey* 74, affirmed.

In such cases, the statute of limitations only extends to the ground actually included in the interference. The principle decided in Ament's Executor *v.* Wolf, 9 *Casey* 331, has no application to such a case.

A parol sale of lands, without payment of the purchase-money, and unaccompanied by exclusive and continued possession in the vendee, is within the statute of frauds, and confers no title to the land.

One having title to a tract of land, which was in dispute as to a part of it, is not estopped from asserting such title, by paying a portion of the fees for patenting the tract by an adverse claimant, and taking a release for the undisputed portion of the land.

There can be no title by estoppel, where the contract to which the alleged estoppel is sought to be applied is within the statute of frauds, and can pass no title.

ERROR to the Common Pleas of *Bedford county.*

This was an ejectment by James Entriken against Daniel Washabaugh and George W. Anderson, for a tract of 52 acres 13 perches of land, in Broad Top township. The case was previously before this court, and is reported in 10 *Casey* 74.

The plaintiff's title commenced with a descriptive warrant to Mary Foster for 50 acres, dated the 2d October 1792; on which a survey was made of 95 acres 60 perches, and returned on the 2d April 1821. Mary Foster, by her will, proved on the 27th July 1829, devised all her land in Bedford county to her son, Thomas Foster.

Thomas Foster died without issue, leaving as his heirs at law three brothers, Benjamin, Basil, and John, and three sisters, Mary, Sarah, and Elizabeth. John and Sarah subsequently departed this life, both leaving children. And the plaintiff, by conveyances from the heirs of Thomas Foster, deduced title to $\frac{113}{128}$ of the land. This included a deed from Benjamin Foster, dated the 22d March 1855, for his interest in the land; which purported to convey $\frac{113}{128}$ of the Mary Foster tract.

The defendants' title was as follows:—In 1818, Thomas Foster, claiming to be the owner of the Mary Foster warrant, sold it, by parol, to his brothers Benjamin Foster and Ephraim Foster. There was evidence of conversations between the parties in reference to this sale of the warrant, at which Mary Foster was present, and that she knew of the sale, but made no objection to it.

On the 16th October 1819, Benjamin Foster sold the undivided

half of 100 acres, more or less, held by the Mary Foster warrant, to William Anderson. The articles of agreement were recorded on the 10th March 1855. William Anderson lived on the tract adjoining the Mary Foster, and from the time he became the owner, he occasionally cut timber and boiled sugar on the land, and extended three of his fields into the Mary Foster, so as to embrace some three or four acres of the latter tract, but these clearings had been abandoned for several years. A small portion of the meadow- land, however, containing about 135 perches, still continued in use.

On the 29th November 1852, Anderson paid the balance of the purchase-money to the Commonwealth, and took out a patent for the whole tract. And, on the 1st March 1854, he conveyed 52 acres 13 perches to Daniel Washabaugh, one of the defendants.

In 1822, Ephraim Foster sold his interest in this tract to Benjamin Foster, who sold to Loy and Patterson; and Entriken, the plaintiff, having become the owner of the part conveyed to Loy and Patterson, paid $5, one-half of the patenting fees, to Anderson.

The plaintiff's counsel presented the following points, upon which they requested the court to charge the jury :—

1. That the warrant of Mary Foster, being precisely descriptive, and part of the purchase-money having been paid when it issued, she had such an equitable interest from its date, as could only be divested by conveyance, or adverse possession for the statutory period; and that the mere possession of the warrant by Thomas, gave him no title to it, or to the land to be surveyed under it.

2. That the possession of Anderson, as proved by the defendants' evidence, is not such a continued, visible, and notorious possession, as in law gives title by the statute of limitations.

3. That the sale by Thomas Foster to Benjamin and Ephraim Foster, having been by parol, and without payment of the purchase-money, or exclusive and continued possession in the vendees, in pursuance of that sale, it is within the statute of frauds, and gives no title to Anderson claiming under Benjamin, against Thomas Foster or his heirs, except as to Benjamin's one-sixth, as one of the heirs of Thomas, which he, Benjamin, had conveyed to Anderson by written articles of agreement.

4. That the said sale by parol by Thomas Foster to Benjamin and Ephraim Foster being proved, if proved at all, by the evidence of one uncorroborated witness, is not sufficiently proved; and for this reason the verdict of the jury must be for the plaintiff.

The following points were presented by the counsel for the defendants :—

1. That if the jury believe William Anderson, under whom the defendants claim, went into possession of the land in dispute, under the agreement between him and Benjamin Foster, of October 16th 1819, and continued in the uninterrupted, notorious,

[Washabaugh *et al. v.* Entriken.]

adverse, and peaceable possession thereof, by clearing and cultivating a part, and using the balance as farmers generally use their timber-land, for a period of twenty-one years before the commencement of this suit, the verdict must be for the defendants.

2. That if the jury believe, that while Entriken was the owner of that part of the Mary Foster tract, conveyed by Ephraim Foster to Loy and Patterson, he agreed that William Anderson should pay the balance of the unpaid purchase-money, and take out a patent for the whole tract, and release the Loy and Patterson to Entriken or his alienee, the plaintiff is now estopped from setting up any claim to the land in dispute; and that this is especially so, if the jury further believe that the line between the two portions of the tract was made as a division line between Loy and Patterson and William Anderson.

3. That from the neglect of the plaintiff and those under whom he claims, for more than twenty-one years, to pay taxes on the land in dispute, and his permitting William Anderson to pay the taxes for the whole period, the jury may presume that he was ousted, and such party will be barred by the statute of limitations.

4. That if the jury believe that Ephraim and Benjamin Foster paid to Thomas Foster, by work and labour, or otherwise, the consideration for the land sold to them by Thomas Foster by parol, in November 1818, in the presence of Mary Foster, or with her knowledge and consent and without objection, on remonstrance, on her part, she and those claiming under her are estopped from setting up title to the warrant so sold by Thomas Foster.

The court below (KIMMELL, P. J.) affirmed the plaintiff's points, and negatived those of the defendants. To this instruction the defendants excepted; and a verdict and judgment having been rendered for the plaintiff, the defendants removed the cause to this court, and here assigned the same for error.

*Cessna & Shannon* and *King & Jordan,* for the plaintiffs in error.

*Russell & Forward,* for the defendant in error.

The opinion of the court was delivered by

THOMPSON, J.—The respective titles of the claimants in this action of ejectment, appear in 10 *Casey* 74, and need not be restated. It also appears, under the same reference, that one of the main points (title in the defendants by virtue of the statute of limitations) was passed upon by this court. Whether any new or other testimony on this point was given on the last trial, we are uninformed, but we may fairly presume there was not. This being so, we will not allow ourselves to be called upon to review

[Washabaugh *et al. v.* Entriken.]

that decision. If it were an open question, however, we could come to no other conclusion than therein expressed. The case of Ament's Executors *v.* Wolf, 9 *Casey* 331, is far from reaching this case. It differs widely from it, not only in the unmistakeable character of the occupancy, but in the clear proof of its continuity. It is well known, that I did not agree to the principle of that case; but it is nevertheless the law, and not open now to be contested; and it does not help the plaintiff in error. There the possession was taken pursuant to a warrant and survey, and it was kept up, using the woodland, as farmers usually do, within the survey. There could hardly be a question, it was thought, about the notoriety and adverse character of the possession. Here, the clearing over by Anderson was of but a few perches (135) on the land in dispute. There had been a prior clearing of 140 perches, at another place, by some other person, but it seems, that had been suffered to grow up again into a wild state. There was no payment of taxes by Anderson on the Mary Foster warrant, under the purchase from B. Foster of the undivided half of it. Indeed, it would seem, he did not rely on this title, for he neither paid taxes, as an owner, nor placed it on record until 1854. He undoubtedly knew Benjamin's title; that it was derived through a parol sale from Thomas Foster, who had no title to sell, and even the terms of that sale had not been complied with by the purchasers. This accounts for the estimate Anderson seemed to place upon his title by purchase. But as there was no actual taking possession of the entire tract, with the avowed intent of holding it, or by other notorious and distinct acts, showing a claim to the whole of it, such as occupying a portion of it, and having the whole returned and taxed, as a claimant of it, it became important to rely on this clearing over the line (an extension, it would appear, of improvements on adjoining tract), as under colour of title, by reason of the purchase from Benjamin. But this occupancy, without more, was too equivocal for that. It was notice of nothing but an interference—it was not exclusive. It was only indicative of a common occurrence—of one owner extending his fields by accident, on to lands of another. The statute has never been held to apply, in such cases, to more than the ground enclosed. Here it was only 135 perches; for the former clearing, by some other occupant, on the adjoining tract of 140 perches, had been suffered to grow up and return to its wild state. Besides all this, Anderson, it would seem, had laid off the purchase from Benjamin, from the west end of the tract, by a line on the ground, which excluded the land in controversy. How, then, could his entry on the portion now claimed, be considered under colour of title? But we need not pursue this subject further. The requisites, necessary to make title by the statute, were not in evidence, and it was proper in the court to refuse to submit the

[Washabaugh *et al. v.* Entriken.]

question on the statute to the jury : De Haven *v.* Landell, 7 *Casey* 120.

The second alleged error is to the affirmative response of the court to the plaintiff's third point. The proof of the parol sale and evidence of performance, in this case, would, at no time in the judicial administration of the statute of frauds, in this Commonwealth, have been held sufficient to take the case out of its operation. It falls far short of the modern requisites : Brawdy *v.* Brawdy, 7 *Barr* 160; Poorman *v.* Kilgore, 2 *Casey* 371 ; Blakeslee *v.* Blakeslee, 10 *Harris* 243; Postlethwait *v.* Frease, 7 *Casey* 472 ; Irwin *v.* Irwin, 10 *Id.* 525. Here, there was no payment of purchase-money, no improvements made, and no promise to convey. It is idle to talk about title through such a contract, and the court was right in regard to this point.

The fourth assignment of error is to the refusal of the court to charge that the plaintiff was estopped by the act of Entriken in paying $5, the one-half of the patenting fees for the patent, to Anderson for the land in dispute. The doctrine of equitable estoppels is all right in proper cases, but facts must exist to give rise to it. After Anderson had taken out the patent, Entriken having an undisputed title to 28 acres of the tract, as he supposed, gave him $5 for a release of the legal title to that portion of it. Did this estop him from claiming more of the tract as between him and Anderson? We think it would be hard to maintain such a position. Anderson was not induced to take out the title by any pre-agreement that Entriken was to pay half, and to have only the 28 acres; and there is not even a pretence that the defendants either knew of the payment of the $5, much less acted upon it in making the purchase. It would hardly have helped them if they had. It was in no sense an estoppel, and the court were right in refusing to charge as requested. The numerous authorities cited by the plaintiff in error, are indisputably the law ; but the facts are not sufficient in our opinion to raise the point.

The fifth point we do not find sustained by the evidence, and hence it was not error to answer it in the negative or not to answer it at all.

The sixth point is more barren of merit, as an estoppel, than the assignment of error already disposed of on that subject. The foundation for it in the evidence is, that the parol sale of the warrant in the name of Mary Foster, by Thomas to Benjamin and Ephraim Foster, was frequently talked about in her presence. There is no evidence that these conversations took place before the sale, or that Benjamin and Ephraim were induced to believe the warrant belonged to Thomas, and were thus misled into making the purchase. This would have been material to have been shown, if there had been a purchase that could have been

[Washabaugh *et al. v.* Entriken.]

implied as against Thomas, supposing him to have been the legal owner. But they could not well complain that they were defrauded by the silence of Mary Foster into the making of a contract, that was void by force of the statute, that was no contract for the passage of a title, under all the circumstances of the case. Nor could the most unsophisticated individual have been much damaged by a contract on which it would appear nothing was paid, and no improvements made. The doctrine of estoppel has no place in such a state of facts.

Judgment affirmed.