## Hinchman, Appellant, *v.* Phila. & West Chester Turnpike Road.

[Marked to be reported.]

*Railroads—Turnpike companies—Street railways—Sale of railroad—Act of March 15, 1865.*

Where a turnpike company is authorized by an act of assembly to purchase the road, property and franchises of a passenger railroad company, and is invested with the like powers, privileges and immunities as the railroad company, but with authority to remove the tracks, the turnpike company may, after the expiration of twenty-seven years, rebuild and operate the railroad.

*Corporations—Charter—Forfeiture—Act of Feb. 19, 1849.*

In such a case the removal of the rails and the sale of the cars and property formerly belonging to the railroad in pursuance of an express legislative authority, raises no implication of abandonment or other disability as to the future exercise of the franchises. The provision of the act of Feb. 19, 1849, as to forfeiture, does not apply to such case.

No charter to a corporation for public purposes can be forfeited except by the commonwealth in a direct proceeding for that purpose.

Submitted Feb. 9, 1894. Appeal, No. 259, Jan. T., 1894, by plaintiff, Charles S. Hinchman, from decree of C. P. Delaware Co., Sept. T., 1893, No. 4, dismissing bill in equity. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill to restrain rebuilding of railroad.

Plaintiff by his bill averred that he was a stockholder of defendant company, and that the company had purchased the rights and franchises of the Delaware County Passenger Railroad Co. in the year 1865, and had operated the railroad until November of that year, when the cars, horses and harness were sold; that since that time the railroad has not been in operation. That in March, 1893, defendant company had proceeded to re-

build the railroad and operate the same. Plaintiff prayed: (1) That defendant company, its officers and servants, be enjoined from rebuilding said railroad and operating the same; (2) that the rights and franchises of said railroad company be decreed to have lapsed by reason of nonuser; (3) that they be decreed to be null and void. Demurrer filed.

The act of March 29, 1859, P. L. 354, incorporating the Delaware County Passenger Railroad Company, provided:

"Sec. 1. Be it enacted . . . . That James Miller . . . . be and they are constituted and appointed commissioners to organize an incorporated company by the name of the Delaware County Passenger Railroad Company with power to lay and construct a railway, of the same gauge as the present passenger railway in the city of Philadelphia with double or single track connecting with the West Philadelphia Passenger Railway on Market street at or near the western terminus thereof on said street, and extending westwardly along said Market street to the West Chester plank road, and along said plank road as far from time to time as the public convenience may require or the public use may justify. Provided, however, That before the said West Chester plank road shall be used for said purpose the assent of said company shall be had and obtained and that said railroad may be laid or constructed on said plank road at its present grade.

"Sec. 4. That said incorporation shall be organized as specified by an act entitled 'An act regulating railroad companies,' passed February nineteenth, one thousand eight hundred and forty-nine, and the several supplements thereto; and when organized shall be governed and regulated by the provisions thereof, in all respects, so far as said provisions are applicable thereto."

The act of March 15, 1865, P. L. 356, provided:

"Sec. 1. Be it enacted . . . . That in case of a sale of the road, property and franchises of the Delaware County Passenger Railroad Company under the present or any future mortgage, or in pursuance of any judicial decree or proceeding, it shall be lawful for the president and managers of the Philadelphia and West Chester Turnpike Road Company to purchase the same with their corporate funds; and the said turnpike road company shall thereupon become and be the absolute owners of said road, property and franchises and invested with the

like powers, privileges and immunities and subject to the same restrictions and conditions as the said the Delaware County Passenger Railroad Company were before such sale invested with and subject to. Provided, That the said turnpike road company may remove the tracks and superstructure of said railroad and dispose of the materials thereof and of the other property so purchased upon condition however that they shall, within three months after the removal of any part of said track and superstructure, restore that part of their road to as good order and condition for public travel as the same was in before said railroad track was laid; and Provided, further, That this act shall not be construed to impair or in anywise affect the provisions of the several acts of assembly, relating to the said turnpike road company."

Demurrer sustained, in following opinion, by CLAYTON, P. J.:

" Can an individual, by a private bill in equity, procure the forfeiture of a charter? We are of opinion that he cannot. The stockholders can, if they desire it, proceed to dissolve the corporation, but this has not been done. A court of equity can only bind, by its decree, the parties before it. The commonwealth is not a party, and it alone is interested in declaring the forfeiture asked for. All laws creating a forfeiture are to be strictly construed. The mere fact that an act has been committed that might amount to a forfeiture will not have that effect until the party affected has actually taken advantage of his right to forfeit.

" All forfeitures may be waived, and, being once waived, cannot be revived for the same causes. Until the commonwealth, therefore, actually declares the forfeiture, the company exists. It would be clearly against equity for the commonwealth to lay by until the company, in good faith, makes an effort to honorably carry out the purposes of its charter, and then proceed for a forfeiture, solely because of its laches in not having sooner exercised its powers.

" The only reason alleged for the forfeiture is, that the charter was granted subject to section 19 of the general railroad law of 1849, which provides for a forfeiture where a railroad is permitted to fall into decay for over two years. It may be doubted whether this clause applies to this charter. It may be that the reference to the act of 1849 only applies to the organ-

ization of the company in this case. This view is strengthened by the fact that subsequent legislation gave express permission to discontinue the operation of the road without providing either for a forfeiture after any particular time, or for a winding up of the company.

" But it is a well settled principle of law that no charter to a corporation for public purposes can be forfeited, except by the commonwealth, in a proceeding for that direct purpose: Turnpike Co. v. McConaby, 16 S. & R. 140; Ib. 145; 1 P. & W. 426; Irvine v. Bank, 2 W. & S. 203; Ang. & Ames, Corp., 10th ed. 815; · Commonwealth v. Allegheny Bridge Co., 20 Pa. 185; Ritter & Sons Ferry Co., 14 Pa. C. C. R. 10."

*Errors assigned* were, (1) in sustaining demurrer; (2) dismissing bill; (3, 4) in not entering decree against defendant.

*Garrett E. Smedley*, and *J. McGregor Gibb*, for appellant.— The provisions of the general act of 1849 were as much a part of the charter of the railroad company as if it had been written in the special act of incorporation: R. R. v. Casey, 26 Pa. 301.

There is an implied contract on the part of the corporation that it will perform the duties and exercise the privileges conferred by the charter. When it is expressed in the act of incorporation itself, or in a general statute in force at the time of the grant or in the organic law of the state, that the legislature shall have power to revoke or annul a charter, such provision becomes a condition of the grant and one of the terms of the contract: Lumber & Boom Co. v. Com., 100 Pa. 438; Com. v. Lykens Water Co., 110 Pa. 391.

Independent of the provisions of the act of incorporation, the charter became voidable by reason of the nonuser of the franchises: Com. v. Bank, 28 Pa. 383. This is a ground for forfeiture: Com. v. Hulings, 129 Pa. 317; Pierce on Railroads, 11; Turnpike Co. v. Com., 1 Penny. 458; Act of June 19, 1871, P. L. 1361; Western Penna. R. R. Co.'s Ap., 104 Pa. 399.

Under the act of June 19, 1871, P. L. 1361, a court of equity has jurisdiction to inquire whether a railroad, chartered under the act of 1868, possesses the franchises it claims, and, if not, injunction is the appropriate remedy for the wrong: Edgewood

R. R. Co.'s Ap., 79 Pa. 257; Western Penna. R. R. Co.'s Ap., 104 Pa. 399.

*A. Lewis Smith*, for appellee.—That which was bought at the judicial sale was the "road, property and franchises" of the Delaware County Passenger Railroad Co.   The franchises consisted of the right to lay and construct a railway with single or double track, connecting with the West Philadelphia Passenger Railway on Market street and extending westwardly on Market street to the West Chester plank road, and along the latter "as far, from time to time, as the public convenience may require, or the public use may justify."

It is no uncommon thing for the franchise to be held in abeyance, or for its exercise to be suspended.   Scarcely a corporation uses all its powers all the time.

No case can be cited where a collateral franchise has been forfeited for nonuser.   Every adjudicated case is one where the penalty has been inflicted for the willful nonuser of a fundamental provision in the charter.   It must be a misuser or nonuser in regard to matters which are of the essence of the contract between the corporation and the state, and the acts or omissions complained of must be repeated and willful, not permissive, as here.

The state alone was interested to make this inquiry: Western Penna. R. R. Co.'s Ap., 104 Pa. 399.

OPINION BY MR. JUSTICE GREEN, March 5, 1894:

By the act of March 15, 1865, P. L. 356, the defendant corporation was expressly authorized and empowered to purchase the road, property and franchises of the Delaware County Passenger Railroad Company at any judicial sale thereof to be thereafter had.   The act declared that the said turnpike road company should thereupon become and be the absolute owners of said road, property and franchises, and invested with the like powers, privileges and immunities, and subject to the same restrictions and conditions as the passenger railroad company was, before such sale, invested with and subject to.   The act further provided, "That the said turnpike road company may remove the tracks and superstructure of said railroad and dispose of the materials thereof, and of the other property so pur-

chased upon condition, however, that they shall, within three months after the removal of any part of said track and super-structure, restore that part of their road to as good order and condition for public travel as the same was in before said rail-road track was laid."

It is alleged in the bill in this case that the road, property and franchises of the passenger railroad company were duly sold under a mortgage thereon, and were purchased by the turnpike company under the authority of the act of 1865, and that subsequently the turnpike company sold the cars, horses and harness purchased from the passenger railroad company, and also the rails and other iron lately belonging to the passenger railroad company. No complaint is made that the turnpike company did not place its road in as good condition for use as it was before the passenger railroad was built. In 1893 the turnpike company resolved to rebuild the railroad, and this bill is filed for an injunction to prevent them from so doing, on the ground that the franchise to build a passenger railroad was forfeited by nonuser.

The passenger road was built and run on the turnpike road. It is fair to assume, though unimportant to this contention, that, having proved unremunerative, it was abandoned in 1865, but its franchises were preserved by the legislation above referred to. The act of 1865 imposed no restrictions or limitations upon a re-exercise of those franchises. On the contrary it expressly authorized those things to be done which, ordinarily, would be regarded as evidence of an intention to abandon. When therefore the turnpike company sold the cars, horses, harness, rails and iron formerly belonging to the railroad company, they did so in pursuance of an express legislative authority, and incurred thereby no implication of abandonment or other disability as to the future exercise of their franchise. It follows that when the turnpike company now desires to re-exercise the franchise of the railroad company, which belongs to it by a lawful and un-restricted purchase, it cannot be held to be subject to an impli-cation of abandonment and therefore of forfeiture, resulting from a long continued non-exercise of the franchise. Such non-exercise, being a necessary, and therefore an intended, re-sult of the authorized sale of the cars, horses, harness, rails and other iron of the railroad company, and the removal of the

tracks and superstructure of the railroad, also authorized by the act of 1865, cannot possibly be a cause of forfeiture. Notwithstanding these acts thus legitimated, the franchise of the railroad continued, and was simply suspended during its period of non-exercise, and may therefore be resumed at pleasure. The right to acquire the franchise, and the concurring right to sell the appliances and remove the tracks of the railroad company, being conferred by the same act of legislation, cannot be held to be inconsistent with each other, and therefore may coexist without any hostile implication. In this essential feature the present case differs from all the cases of forfeiture arising from disuse of the corporate franchise. The decisions in those cases are therefore inapplicable to the present. The nineteenth section of the act of 1849 has no application, first, because this company was not incorporated under that act, and, secondly, because it has express legislative authority to do the very things which are set up as the cause of forfeiture.

We also fully agree with the learned court below that no charter to a corporation for public purposes can be forfeited except by the commonwealth in a proceeding for that direct purpose : Com. v. Allegheny Bridge Co., 20 Pa. 185, and many other cases.

Judgment affirmed.