## Blair et al. Appellants, *v.* Pennsylvania Turnpike Commission.

Argued April 13, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.
(RENO, J., absent)

*Ernest O. Kooser,* with him *James O. Courtney* and
*David Blair* for appellants.

*Charles F. Uhl,* with him *John D. Faller, Harry C.
Pepper, N. L. Wymard,* Deputy Attorney General, and
*James H. Duff,* Attorney General, for appellee.

OPINION BY KELLER, P. J., July 16, 1943:

Plaintiffs obtained a verdict of $525 in eminent domain proceedings instituted by the Pennsylvania Turnpike Commission for the taking of 8.20 acres of land out of a tract of 44½ acres, which plaintiffs had shortly before purchased for $250. Being dissatisfied with the amount awarded them, they asked for a new trial. The court discharged the rule and they have appealed.

The Pennsylvania Turnpike Commission, by the Act of May 21, 1937, P. L. 774, was created an instrumentality of the Commonwealth, with power and authority to construct, operate and maintain a turnpike "from a point at or near Middlesex, in Cumberland County, to a point at or near Irwin, in Westmoreland County, [a distance of about 160 miles], together with connecting tunnels and bridges;" the purpose being to construct a short, direct turnpike between those points, with low grades and few curves, by constructing tunnels through the mountains between. It was a matter of common knowledge that the plan of construction involved the use to a considerable extent of the right of way of the South Pennsylvania Railroad Company, (hereinafter called South Penn), which had been incorporated in 1882 to construct a railroad from the City of Harrisburg, Dauphin County, through the Counties of Dauphin, Cumberland, Franklin, Huntingdon, Fulton, Bedford, Somerset, Westmoreland and Allegheny, to Port Perry, Allegheny County, a distance of 209 miles, and in pursuance of its charter rights had acquired rights of way for its railroad purposes—and in Somerset County had purchased lands for said purpose, by deeds of conveyance in fee simple, with descriptions by courses and distances referred to the center line of its adopted route. It began the work of construction, made cuts and fills and did considerable work on the tunnels, or some of them, which its adopted route called for. It

executed and delivered to the Union Trust Company of New York a mortgage or deed of trust to secure an issue of bonds in the total amount of $20,000,000 of which $5,600,000 were issued. The mortgage was recorded in every county through which its right of way ran and became a first lien upon the railroad, property and franchises of South Penn. South Penn ceased the active construction of the railroad in the latter part of 1885. Prior to April 17, 1890, the property and franchises of South Penn had been sold at sheriff's sale by the Sheriff of Fulton County, subject to said first mortgage, and conveyed to the South Pennsylvania *Railway* Company, which was organized as of that date to take, acquire, hold, use and operate the property and franchises of South Penn. Subsequently the trustee of said mortgage or deed of trust sold the said property and franchises, under the provisions of said mortgage, and Fulton, Bedford and Somerset Railroad Company became the owner thereof and by deed dated October 21, 1938, duly recorded, conveyed the same to Pennsylvania Turnpike Commission. South Penn and its successors in title by reorganization, conveyance, etc., at all times maintained corporate organization and made annual return to the Auditor General and paid corporate and franchise taxes until the conveyance to the Turnpike Commission.

On September 1, 1937, three months and ten days after the effective date of the Act of May 21, 1937, supra, the plaintiffs purchased from James O. Courtney and A. M. Matthews, for $250, a tract of land of 44½ acres in Jefferson Township, Somerset County, which purported to include three parcels of land, (aggregating 6.32 acres) recited as "right of way of the South Penn Railroad," which had been sold in 1894, as unseated land, by the County Treasurer for unpaid taxes for the years 1892 and 1893.

South Penn had acquired said tracts of land for right

of way purposes, including part construction of Laurel Hill Tunnel, by two deeds of conveyance in fee simple dated March 2, 1885, recorded the same day, the one from Samuel Hetzer and wife for 1.80 acres of land and the other from Daniel Hetzer and wife for two tracts, containing 3.25 acres and 1.27 acres respectively, the consideration in each deed being $25. They constituted the location of the eastern portal to Laurel Hill Tunnel and 1600 feet of tunnel right of way, adopted as the route of South Penn's railroad. Some work had been done by South Penn at the eastern portal or entrance to this tunnel when the work of construction ceased in September, 1885.

The Commission ascertained that for turnpike purposes more land would be required at the eastern entrance to this tunnel than had been conveyed to South Penn. Accordingly it entered upon, took and appropriated under the Act of 1937 two tracts of land belonging to plaintiffs, one, south of the right of way, containing 1.80 acres of land, known as Parcel No. 1, and the other, north of the right of way, containing .71 of an acre, known as Parcel No. 2, and began proceedings to condemn them, filing bond, as ordered, in the sum of $2,000. The owners of the land objected to the failure to include in said condemnation proceedings 5.69 acres of the right of way of the railroad company, which they claimed to own by virtue of the deed to them, and which the Commission claimed to own by virtue of the deed from Fulton, Bedford and Somerset Railroad Company, the ultimate successor in title of South Penn.

Accordingly, while denying plaintiffs' ownership of said 5.69 acres, the commission amended its condemnation proceedings so as to include whatever right, title or interest plaintiffs might have in said 5.69 acres (known as Parcel No. 3), and filed bond, as ordered by the court, to cover the damages sustained by the plaintiffs from the taking of all three parcels, containing 8.20 acres.

Viewers were appointed who awarded these plaintiffs $1,380 damages. They appealed to the court of common pleas, where the issue was tried before a jury, resulting in the verdict abovementioned.

There was no dispute as to plaintiffs' ownership of Parcels No. 1 and No. 2. The dispute centered about their ownership of Parcel No. 3; and the damages sustained by them by reason of the taking of the lands appropriated.

Plaintiffs claimed under the following chain of title:

Deed from Elias L. Knupp and wife to Amos W. Knepper, dated March 17, 1903, and recorded April 17, 1903, for 44 acres and 80 perches; which recited that 6.32 acres included therein had been conveyed to said E. L. Knupp by County Treasurer's deed, the same having been sold by him for non-payment of taxes assessed on said real estate, as unseated lands, for the years 1892 and 1893 as before mentioned. One tract, known as Samuel Hetzer parcel, contained 1.80 acres; and the other, known as Daniel Hetzer parcel, contained 4.52 acres. The remainder of the 44 acres and 80 perches tract was derived from a deed of John H. Uhl and wife to E. L. Knupp, dated September 1, 1894, acknowledged November 25, 1899, for 198 acres in Jefferson Township, which the sheriff had sold to Uhl by deed dated May 23, 1893, acknowledged in open court on May 26, 1893, having levied upon and sold the same in execution as the property of Daniel Hetzer and Samuel Hetzer.

Deed from Amos W. Knepper and wife to Staniford L. Lambert, dated July 3, 1924, recorded July 9, 1924, for 44½ acres as above.

Deed from Leland W. Walker, Admr. c.t.a.d.b.n. of Staniford L. Lambert deceased, by virtue of an order of sale for payment of debts, duly approved by the Orphans' Court of Somerset County, to James O. Courtney and A. M. Matthews, dated September 22, 1932, recorded January 16, 1933, for said 44½ acres. Consideration $55.

Deed from James O. Courtney and wife and Archibald M. Matthews and wife to Helen T. Blair, David Blair, Jr., Katherine T. Lewis and John B. Blair (the plaintiffs), dated September 1, 1937 for the same 44½ acres. Consideration $250.

Plaintiffs also claimed title to the railroad right of way strip of 5.69 acres by open, visible, notorious, adverse, hostile and continuous possession in themselves and their predecessors in title for over forty years.

Eight assignments of error were filed by appellants, which may be grouped under four heads.

(1) Discharge of rule for new trial.

(2) Sustaining defendant's objections to S. H. Jenks, J. F. Neilan and Burgess Ross, respectively, as witnesses for plaintiffs on the question of damages.

(3) Exclusion of certain rebuttal testimony for plaintiffs.

(4) The charge of the court as to acts purporting to prove adverse possession.

(1)—With the exception of errors of law, the grant or refusal of a new trial is largely a matter resting in the sound discretion of the lower court, and we find no abuse of that discretion in this record. Appellants have not printed the testimony of defendant's witnesses, and without it we are certainly not in a position to disturb the ruling of the court below as respects the weight or preponderance of the evidence. We may say, moreover, that if any errors were committed by the trial court they were to the advantage of the appellants and therefore not assignable by them. The court submitted the case to the jury as if the plaintiffs' title to the railroad right of way (Parcel No. 3, 5.69 acres) had been sufficiently proved, whereas it might properly have ruled that their title to that particular parcel had not been satisfactorily established. (a) Passing by, for the moment, the question of the right of the taxing authorities to assess for local taxation this strip of right of

way, which was essential and indispensable for the construction and operation of the railroad, the tax sale of 1894 passed no title; for the testimony clearly established that the taxes were assessed on *seated* land and the sale was had for unpaid taxes on *unseated* land. Under the Act of June 3, 1885, P. L. 71, where land is regularly assessed, either as seated or unseated, and where the procedure leading up to the sale is regular and *follows the assessment,* the sale is valid and effective, whether the land was seated or unseated at the time of the assessment: *Scott et al., Trustees v. Bell, Secy. of Banking,* 344 Pa. 243, 25 A. 2d 308. But the sale must *follow the assessment* in order to be valid, and there can be no valid sale of land for taxes on unseated land, where the assessment was on seated land. It was also proved by plaintiffs' own witnesses that no certificate could be found in the County Treasurer's office from the County Commissioners listing unseated lands for the years 1892 and 1893; and that ample personal property—cut stone—to pay the taxes was on the right of way at the time of the treasurer's sale. But we are further of opinion that the mere fact that South Penn ceased construction work in September, 1885, did not authorize the levying of local taxes for the years 1892 and 1893, on the right of way, which was necessary and indispensable for the construction and operation of the railroad: *Philadelphia v. Phila. & Reading R. R. Co.,* 38 Pa. Superior Ct. 529; *Philadelphia v. Fairhill R. R. Co.,* 41 Pa. Superior Ct. 245; *Philadelphia to use v. Phila. & Reading R. R. Co.,* 177 Pa. 292, 35 A. 610; *City of Erie v. Piece of Land,* 175 Pa. 523, 34 A. 808. The Act of March 5, 1903, P. L. 13, cited by appellants in the 'Postscript' to their brief, was not in force when the sale was made by the County Treasurer. (b) We are also of opinion that the testimony as to adverse possession of this railroad right of way strip (Parcel 3) did not measure up to the estab-

lished requirements even as against an ordinary owner, much less as respects a strip of land owned in fee simple by a railroad company devoted to the purpose of a public highway. Testimony as to the cutting from time to time of timber on the tract of 198 acres,—especially without special reference to these *5.69* acres—was not sufficient: *Boyer v. Lengel,* 224 Pa. 357, 73 A. 323; *Burke v. Hammond,* 76 Pa. 172; *Washabaugh v. Entriken,* 36 Pa. 513; *Groft v. Weakland,* 34 Pa. 304; *Huffman & Foreman v. McCrea,* 56 Pa. 95. Certainly no harm was done the plaintiffs by submitting the question to the jury. The shanties built on the strip by the *purchasers of stumpage rights* in the whole tract, for housing purposes while engaged in that operation, and *removed by them* (not by plaintiffs), when the defendant began work on the construction of the turnpike, did not amount to such open, notorious and adverse possession by plaintiffs and their predecessors in title, as to vest title to the land in them; even if title by adverse possession could be obtained as to the necessary and indispensable right of way of a railroad company, which has been ruled otherwise. See *Conwell v. Phila. & Reading Ry. Co.,* 241 Pa. 172, 88 A. 417; *Delaware, L. & W. R. R. Co., v. Tobyhanna Co.,* 228 Pa. 487, 77 A. 811; 232 Pa. 76, 81 A. 132; *Hinchman v. Turnpike,* 160 Pa. 150, 28 A. 652; and on abandonment, *Lenhart v. Wright,* 286 Pa. 351, 357, 133 A. 495; *Pittsburgh v. P. & L. E. R. R. Co.,* 263 Pa. 294, 106 A. 724; *Com. v. Koontz,* 258 Pa. 64, 101 A. 863; *Hanover Junction &c. R. R. Co. v. Haldeman,* 82 Pa. 36, 45.

The amount of damages sustained by plaintiffs was submitted to the jury on the basis of the fair market value of the tract of 44½ acres immediately before and after the taking of the 8.20 acres of land for turnpike purposes (*City of Phila. v. Linnard,* 97 Pa. 242, 247; *Schuylkill Nav. Co. v. Thoburn,* 7 S. & R. 411, 422). Plaintiffs' witnesses fixed the value of the plaintiffs'

land before the taking at from $17,700 to $25,800, and at $220 to $440 after the taking. While defendant's witnesses[1] gave the values at from $300 to $375 before the taking and $110 to $225 after the taking—and, as defendant denied plaintiffs' title to Parcel No. 3, its witnesses were allowed to apportion the damages because of taking Parcel No. 1 at $50 to $125, Parcel No. 2 at $1 to $25 and Parcel No. 3 at $18 to $115; while David Blair, plaintiffs' agent, was permitted in rebuttal to apportion the damages testified by him to have been $20,580 [$20,800 before, less $220 after] as follows: Parcel No. 1 $4,000, Parcel No. 2 $1,000 and Parcel No. 3 $15,280.

The verdict was a general one in favor of the plaintiffs for $525, without any finding adverse to their ownership of Parcel No. 3. This did the *plaintiffs* no harm, for the verdict thus included the damages for the taking of Parcel No. 3, as to which, in our opinion, plaintiffs had not submitted evidence of title sufficient to go to the jury. The jury, no doubt, were impressed by the fact that the plaintiffs bought the entire tract for $250, three months after the turnpike was authorized, and that it had been sold only five years before for $55; and also by the fantastic claims of plaintiffs' witnesses, who ascribed thousands of dollars of value to Parcel No. 3 because of its 'strategic location' for a tunnel under Laurel Hill; thus attempting to determine the damages by its usefulness or necessity to the *appropriator* or *taker* rather than by the difference between its *fair market value* before and after the taking, for any use to which it *could reasonably be anticipated the land would in the future* be applied, excluding *speculative* values (*Stone v. D. L. & W. R. R. Co.*, 257 Pa. 456 101 A. 813; *Marine Coal Co. v. Pgh. M & Y. R. R. Co.*, 246 Pa. 478, 92 A. 688; *Hall v. D. L. & W. R. R. Co.*, 262 Pa.

---

[1] Taken from the charge of the court. The testimony of defendant's witnesses was not printed as part of the record.

292, 105 A. 98; *Rothenberger v. Reading City,* 296 Pa. 423, 429, 146 A. 104). Plaintiffs did not own sufficient land for a completed tunnel,[2] and if they had, unless it was part of a highway extending for miles on each side, a tunnel would have been less than worthless. The measure of value plaintiffs would have applied may be used in negotiating *private* sales to individual *purchasers,* but not in eminent domain proceedings.[3]

The evidence was submitted to the jury in a charge that was more favorable to the plaintiffs than they were entitled to, and the court was not guilty of error in discharging their rule for a new trial.

(2) Three witnesses, who professed to be familiar with the plaintiffs' property and its fair market value before and after the taking, gave testimony on behalf of the plaintiffs. William Friedline fixed the values at $25,800 before and at $250 after the appropriation; but on cross-examination qualified his testimony by setting the fair market value of the property as a whole, before the taking, at $2,500. George Martin's figures were $17,700 before and $440 after; while David Blair's were $20,800 before and $220 after. The court properly refused to permit S. H. Jenks, J. F. Neilan and Burgess Ross who had never seen the property before the appropriation to fix a valuation of the tract before the taking based on their experience in the purchase of rights of way and its value for the purpose of railroad or turnpike condemnation: *Schuck v. West Side Belt R. R. Co.,* 283 Pa. 152, 128 A. 832.

(3) David Blair, plaintiffs' agent, was permitted in rebuttal to apportion his estimate of damages among

---

[2] Laurel Hill Tunnel, as completed, is 4541 feet long.

[3] Since the preparation of this opinion, the Supreme Court has decided the case of *A. D. Graham & Co., Inc. v. Pennsylvania Turnpike Commission,* 347 Pa. 622, 33 A. 2d 22, which disposes of a number of questions along the same lines as those involved in this appeal. We believe that our action is in accord with the principles laid down in that case.

the three parcels. He was not allowed to discuss again matters upon which he had testified in chief and on cross-examination, in order to emphasize the specific items which entered into his valuation. There was no error in this.

(4) The extract from the trial judge's charge complained of in the eighth assignment with respect to the evidence bearing on adverse possession did not go as far as it might have. Under the testimony in this case, the court would have committed no error in charging the jury that the plaintiffs' claim of title to Parcel No. 3 by adverse possession had not been sufficiently proved to be considered by them.

The assignments of error are overruled and the judgment is affirmed.