# Delaware, Lackawanna & Western Railroad Company *v.* Tobyhanna Company, Limited.

*Real estate—Railroads—Adverse possession—Statute of limitation—Lands owned by railroad not part of right of way.*

1. Land purchased by a railroad company outside of its right of way for railroad purposes generally, not present but prospective, but never actually dedicated to public use, is subject to the statute of limitations, and title to it may be acquired as against the company by adverse possession.

2. Nothing is included in the right of way of a railroad company except what is subject to condemnation, and when a railroad company asserts a public use in land it has purchased, to overcome the adverse possession by another, its claim can only be sustained by showing the existence of conditions which would have permitted it to condemn the land in the first instance, or actual dedication to such use; if such conditions exist, it may recover what it has lost by appropriate proceedings; if these do not exist, it is fairly persuasive that they never did.

3. A railroad company chartered prior to the General Railroad Law of February 19, 1849, P. L. 79, and authorized to occupy for the purpose of building its road "land which shall be necessary or suitable for the intended road," is restricted, when its right to take land is chal-

lenged, to only such quantity of land as is necessary and essential for the purpose designated by its charter.

4. In an action by a railroad company to recover possession of a lot of land purchased by the company fifty years before the suit was brought, but never dedicated to public use, the defendant is entitled only to so much of the lot as was actually occupied by its structures adversely for more than the statutory period; but it will not be entitled to the whole of the lot where the evidence shows that the portion of the lot not occupied by the defendant's structures was open and used by the public without restraint in hauling material for shipment from the railroad company's siding.

Argued March 7, 1911.   Appeals, Nos. 44 and 32, Jan. T., 1911, by plaintiff and defendant, respectively, from judgment of C. P. Monroe Co., Dec. T., 1907, No. 22 on verdict for plaintiff in case of The Delaware, Lackawanna & Western Railroad Company v. The Tobyhanna Company, Limited.   Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ.   Affirmed.

Ejectment for land in Coolbaugh township.   Before STAPLES, P. J.

This appeal is from a retrial after a reversal of a former judgment in favor of the plaintiff.   See 228 Pa. 487.

The facts are stated in the opinion of the Supreme Court, and in the report of the former appeal.

Plaintiff presented the following points:

1. The land claimed by the defendant by adverse possession having been purchased by the plaintiff for railroad purposes, and having been used for the construction of switches adjacent to and diverging from its main track, was held by the said railroad for a public use, under the grant of its right of way, and no title could be acquired by the defendant to the surface of any portion of what was used for such a purpose, by adverse possession, however long continued.

2. The defendant having purchased the lot of land 700 feet in length and 125 feet in width from the center between main tracks, and having used the same for one of its main tracks, for switches, sidings and passenger station,

freight station and necessary platforms and approaches thereto, such use was a public use and made the entire lot part of a public highway, and title cannot be obtained to any portion of the same by adverse possession, however long continued.

3. It is the undisputed evidence that the plaintiff used the piece of land 700 feet long and 125 feet in width as a part of its right of way, and for public use, and that all parts of it were continuously used so except that physically and actually occupied by the buildings of the defendant; and as to this part, the defendant could gain no title by adverse possession, because its possession was an encroachment upon the right of way of the railroad company.

4. There is no particular width of land recognized by the law of Pennsylvania as the right of way of a railroad. This right of way consists of a strip of land of varying widths as the necessities of the railroad may require for the construction of its main tracks, sidings, turnouts, switches, stations and approaches thereto.

5. When land is acquired by a railroad corporation, either by purchase or condemnation, and is actually used for its railroad, no title can be gained to any portion of what is then used by adverse possession, however long it may be continued.

The court charged in part as follows:
[The court cannot agree with either one of the contentions of the parties in this case, because the plaintiff replies to the contention of the defendant, that it never has had adverse possession of this property, because it has been used by the public and by the plaintiff company for a number of years, and in addition to that, that it is within its right of way, and that no adverse possession can be obtained against the right of way of a railroad company, and therefore the defendant is not entitled to any part of this land. Adverse possession, or the right to property by adverse possession, is where a person, or a corporation, if you please to call it so, which is an arti-

ficial person, has had the exclusive, continuous, uninterrupted, notorious and adverse possession of a piece of land for twenty-one years. You will notice all the elements that are there. It must be open, which is nearly the same as notorious, exclusive, continuous, uninterrupted and adverse, and in order for you to sustain the contention of the defendant company in this particular as to the whole lot of land, you would have to find it, with those qualifications; and while that question is for you, gentlemen of the jury, the court is of the opinion, under all the testimony, that it is not warranted by it; that is, as to the whole tract, because it was not fenced in (there was a fence on the lower side of it) and it was used according to some of the evidence, if you believe it, by the public generally, including the railroad company, and by teams, etc., and notwithstanding the fact that there were certain acts done upon this lot by the defendant company, including the piling of piles and other lumber there for the purpose of shipment on the Delaware, Lackawanna & Western Railroad, that that would not come up to the full measure of proof that would be required to give exclusive possession to this whole tract of land. And I think we will go so far as to instruct you, gentlemen of the jury, that under the evidence there is not sufficient to warrant such a conclusion on your part. We do say to you, however, that while it may not have had the exclusive possession of all of this land, that under the evidence of the defendant company, if you believe it, and we see no reason why you should not, because it is uncontradicted, the defendant company had constructed on this piece of land, about seven or eight feet of its office and a feed house, and that they had been there for very much longer than twenty-one years; and that in addition to that, they had used this feed house and the cellar under the store, the entrance to which was on what is claimed to be the railroad side of the line, and if you find, from all the evidence in the case, that the defendant company has used this land in this way, the storehouse and the

feed house, and has for a period of over twenty-one years used the land in order to have access to the feed house and the storehouse, we say to you that as far as those two places are concerned, the office and the feed house, that it would have such adverse possession, if you believe it was open, notorious, exclusive, continuous and uninterrupted for a period of twenty-one years, as would prevent the plaintiff company from recovering, as far as they, the buildings and land under them are concerned, in this action of ejectment.] [1]

[As to the other buildings that were put upon these premises, which according to the testimony as we recollect it, varied from seven to ten years, namely, the shed and the coal bin, we say to you that there being no such evidence of adverse possession for the period required by law, and for the land upon which they stand, the plaintiff is entitled to recover, and that for all the other land in this tract not occupied by these buildings, the office and the feed house, we say to you that the railroad company is entitled to recover, subject as we have stated to the right of the defendant company to have access to its office and cellar under the office and to its feed house.] [2]

[If you find, therefore, that the defendant company did have adverse possession under the qualifications as made by the court, and as we say to you, gentlemen of the jury, in the court's opinion, the evidence warrants you in so finding, although the question is for you,—we say to you that your verdict should be in favor of the plaintiff for the land upon which the horse shed is erected; the land where the coal bin is erected, and all the other land not covered by the feed house and the office, subject to the right of the defendant company to free access to and from the office, the cellar thereof, and the feed house as it has been wont to have for a period of twenty-one years, and over.] [3]

Verdict for plaintiff for all the land mentioned in the writ of ejectment except that covered by the part of the office of the defendant company on the said land mentioned

in said writ, and that covered by the feed house with the privilege to the defendant company of access to the cellar under said office, and said feed house over the land aforesaid. Both plaintiff and defendant appealed.

*Errors assigned* by plaintiff were the refusal of the five points quoted above.

*Errors assigned* by the defendant were (1–3) portions of charge quoted above.

*A. Mitchell Palmer*, for The Delaware, Lackawanna & Western Railroad Company.—Title by adverse possession cannot be acquired as against a railroad company to a portion of its right of way: Perkiomen R. R. Co. v. Kremer, 218 Pa. 641; Reading Co. v. Seip, 30 Pa. Superior Ct. 330; Lehigh Valley R. R. Co. v. Frank, 39 Pa. Superior Ct. 624; Glisson v. R. R. Co., 15 Pa. D. R. 369; Wilmington & Northern R. R. Co. v. Walker, 15 Pa. D. R. 373; Northern Pac. Ry. Co. v. Townsend, 190 U. S. 267 (23 Sup. Ct. Repr. 671).

The plaintiff is not controlled by any limitation in the act of 1849, except those limitations contained in the eighteenth section thereof. The very nature of a railroad construction makes it impossible for actual, physical possession to cover every foot of the right of way, and no argument can be based upon the failure of the railroad company to occupy the entire width which it acquired for the facilities which the act of 1849 authorized it to widen its right of way to include. The same argument would permit a trespasser to gain title to any part of a public highway outside of that actually and constantly used by the public. When a railroad company condemns land, it is of necessity the judge of how much is required for its use, and this question should not be submitted to a jury in a subsequent action of ejectment against a railroad company: Pittsburg, Ft. Wayne & Chicago Ry. Co. v. Peet, 152 Pa. 488; Pittsburg Jct. R. R. Co.'s App., 122 Pa. 511;

Hummel v. R. R. Co., 175 Pa. 537; Lake Shore & Mich. So. Ry. Co. v. Railway Co., 8 Fed. Repr. 858; Wilmington & Northern R. R. Co. v. Walker, 15 Pa. D. R. 373.

If a plaintiff in ejectment claims title by twenty-one years' adverse possession, he must prove every element necessary to constitute a title under the statute of limitations; otherwise it is the duty of the court to instruct the jury that there is not sufficient evidence to entitle him to recover: DeHaven v. Landell, 31 Pa. 120; Armstrong v. Caldwell, 53 Pa. 284; Huffman v. McCrea, 56 Pa. 95; Horton v. Davidson, 135 Pa. 186; Deppen v. Bogar, 7 Pa. Superior Ct. 434; Wickham v. Sutton, 33 Pa. Superior Ct. 368.

*F. B. Holmes,* for The Tobyhanna Company, Ltd.—An actual adverse possession of land for twenty-one years gives title not only to that part of it which was cleared and cultivated, but to all that was included within marked lines during that period.  Bell v. Hartley, 4 W. & S. 32; Hoey v. Furman, 1 Pa. 295; Fitch v. Mann, 8 Pa. 503; Green v. Kellum, 23 Pa. 254; Sailor v. Hertzog, 4 Wharton, 259; Thompson v. Kauffelt, 110 Pa. 209; Thompson v. Coal & Iron Co., 133 Pa. 46; Griffin v. Mulley, 167 Pa. 339; Mason v. Ammon, 117 Pa. 127; Potts v. Everhart, 26 Pa. 493.

A mere permissive use by the public as a street of a piece of ground left open by the owner in front of his property and concurrently used by himself in his own business and for his own convenience will not work a dedication to public use, nor will it confer upon the public any right as against the owner: Frankford & S. P. City Pass. Ry. Co. v. Phila., 175 Pa. 120; Weiss v. So. Bethlehem Boro., 136 Pa. 294.

The special circumstances which justify the corporation in taking more than sixty feet, must be shown by the company, and it has no right to condemn land in excess of sixty feet in width, except in the cases enumerated in the statute: Curtis v. Columbus & Erie R. R. Co., 16 Pa. D. R.

1017; Robinson v. R. R. Co., 161 Pa. 561; Plymouth R. R.
Co. v. Colwell, 39 Pa. 337; Cumberland Valley R. R. Co.
v. McLanahan, 59 Pa. 23.

OPINION BY MR. JUSTICE STEWART, May 23, 1911:

If the record in the first of these appeals discloses any
material fact that was not considered, or any question that
was not decided when the case was before us in the former
appeal reported in 228 Pa. 487, it has escaped us.  We see
no ground whatever for misapprehension of what was there
decided; but inasmuch as the "tremendous importance of
the question raised not only to the plaintiff, but to all the
railroads of Pennsylvania" is urged upon us, we shall
endeavor to restate what was there decided in a way
which will remove all possible ground for misunder-
standing, as well any lurking suspicion that that decision
conflicts with settled doctrine.  First of all let it be under-
stood that we did not there hold that title to any part of
a railroad company's right of way can be acquired by
adverse user.  We distinctly held that that question was
not before us, and we expressed no opinion in regard
thereto.  The contention of the plaintiff was that the lot
in dispute was part of its right of way.  This was denied
by the defendant, and into that inquiry we entered at
some length.  Our conclusion was adverse to the plain-
tiff's contention on the facts before us.  We have here the
same facts to deal with.  The lot was acquired by the
railroad company more than fifty years ago by purchase.
Its railroad had then been constructed upon land adjoin-
ing, and was then being operated.  How the company en-
tered upon that land originally we are not informed.  To
perfect its right of occupancy it subsequently purchased
from the owner a strip of land 700 feet in length and
100 feet in width; that is to say, the ground used as its
roadbed, with fifty feet of ground on either side of its
center line.  It acquired by the same conveyance, but as
a separate tract, the lot in dispute, thus described in the
conveyance, "Also such additional lands for depot or

railroad purposes at . . . . Tobyhanna stations, as are included within the boundaries following, to-wit: At Tobyhanna, beginning with the centre line of said railroad at a point one hundred feet north of the north corner of the foundation of the water tank and running thence westerly on a line at right angles with the line of the said railroad one hundred and twenty-five feet in width to a corner; thence southerly parallel with and one hundred and twenty-five feet from the center line of said railroad, seven hundred feet to a corner; thence easterly on a line at right angles with the line of said railroad, one hundred and twenty-five feet to the center line of said railroad; thence along said centre line seven hundred feet to the place of beginning. Thus including on the westerly side of the railroad for the said distance of seven hundred feet seventy-five feet in width over and above and outside of said one hundred feet hereinbefore conveyed for right of way." This lot has for years been bisected by a public road, dividing it into two nearly equal parts. The controversy is over one of these. The contention of the plaintiff assumes that the lot is part of the railroad's right of way. Herein consists the fallacy. The fact that it was acquired by purchase, and not in the exercise of the company's right of eminent domain, we regarded as a matter of significance; not that a railroad company may not acquire its right of way in either manner, but because certain incidents attach in the one case that do not in the other. A railroad company can acquire adversely to the owner by condemnation when it establishes a purpose in the condemnation falling within the express letter of the law, giving it the franchise to take: whereas by purchase nothing adversely can be acquired. In the one case the fact of condemnation indicates a public use; and that fact becomes established by the appropriation; in the other, it indicates nothing, and establishes nothing but title in the acquisitor. A railroad company may lawfully acquire lands not strictly essential to the operation of its road, but which may conveniently and profitably be used in connection therewith; but it is only

for the acquiring of such as are essential that the law makes provision by allowing the high franchise to be exercised for their procurement.   These essentials are a roadway, not exceeding a given width, except where physical conditions require greater places selected for sidings, turnouts, depots and engine or water stations.   If it be conceded that these essential lands properly fall within what, for the want of a better term, we call right of way, and when acquired by condemnation are impressed with a public use, and therefore not to be interfered with, the question remains, can as much be affirmed of a strip of land such as that here in dispute, acquired by purchase, without any adjudication that when acquired it was needed for one of the purposes for which condemnation was allowed?   We answered that question in the former appeal in the negative, and we repeat the answer here.   That is to say, no presumption arises from the fact of purchase that the land so acquired was for necessary purposes in connection with the operation of the railroad.   Had the railroad company at that time attempted to acquire this land by condemnation, the burden would have been upon it to show that it was necessary and essential; the declared public use would have become a matter of record, and the land could not thereafter have been devoted to other purposes.   The mere act of purchase committed the company to no particular use of the land.   It may say to the party from whom it purchases, we want it for some purpose for which we could legally condemn it; and in the deed the vendor may recite that it is conveyed for such purpose; but this impresses no use in which the public is concerned or could enforce; it remains a matter that concerns only vendor and vendee. What then will impress it with a public use and bring it within the sanctity of right of way?   We answer nothing but an actual dedication of the land to that use by so employing it, or other equally decisive act.   The plaintiff company had laid its tracks upon and over the land embraced in a larger strip, thus devoting it to a plain and manifest public use in an unmistakable way.   If it has

built switches upon the land acquired by purchase, that again is a decisive act which secures it in the enjoyment of the land acquired.   But as to so much of this land as is now claimed by the defendant through adverse use, the plaintiff has done absolutely nothing upon it to indicate any purpose whatever it had in acquiring it.   Up to the present time it has been free to dispose of it, or apply it to any lawful use except as its vendor can be heard to question its right so to do.   For the company to say now, more than a half a century after the acquisition, that it needs it for a purpose for which it could have originally condemned it, is not only to beg the question, but in itself affords a refutation of the claim.   Fifty years and more have elapsed since it acquired title and during all that time, upon its own admission, the lot has not been required for the exercise of its franchise.   How then could it have been acquired by condemnation?   We are not overlooking our decisions to the effect that a railroad company may in condemning land anticipate future needs with respect to those things which are essential.   We make no attempt to define the limits to this right of anticipation when we say, that attempted provision covering a period of fifty years in matters of this kind must either be pure conjecture resting on no substantial basis, or inspired prophecy, and with respect to condemnation of land the law bases its procedure on neither.   Our effort has been to show the fallacy in the assumption on which the argument on behalf of the plaintiff proceeds that the land in dispute, by the fact of purchase, became a part of the railroad company's right of way.   To be a part of its right of way it must have been acquired as such by condemnation proceedings, or if acquired by purchase, the burden must be on the railroad when its right to hold is challenged to show such circumstances as would have warranted its condemnation.   We state no new proposition.   All that we have said has fullest warrant in Shamokin Valley Railroad Co. v. Livermore, 47 Pa. 465.   In Robinson v. Railroad Co., 161 Pa. 561, it is said by MITCHELL, J., "It is not intended

to interfere with the discretion of the corporation in the location of its stations, sidings, etc., nor with its right to do what good engineering required, but the exercise of both must be in good faith for the purposes the statute permits, and the necessity, extent and location of extra appropriations for such purposes must be definitely shown. The charter limitation of sixty-six feet is mandatory, except in the cases the charter itself specifies, and it cannot be set aside or evaded at mere will. While the discretion is in the corporation, its exercise, when challenged in a court of law, must like every right be sustained by showing the circumstances under which the charter authorizes it." To summarize: (1) however true it may be that no part of the right of way of a railroad company can be acquired adversely, there is no authority for holding that property of a railroad not included in its right of way may not be so acquired; (2) nothing is included in right of way except what is the subject of condemnation, and when a railroad company asserts a public use in land it has purchased, to overcome the adverse possession by another, its claim can only be sustained by showing the existence of conditions which would have permitted it to condemn the land in the first instance, or actual dedication to such use; (3) if such conditions exist to-day, it may recover what it has lost by appropriate proceedings; (4) if these do not exist, it is fairly persuasive that they never did.

So far we have proceeded on the assumption that appellant has no other or wider privilege of condemnation than is allowed under the General Railroad Law of February 19, 1849, P. L. 79, and its supplements. The claim is made that it is not subject to the limitations and restrictions of that act inasmuch as it has succeeded to all the rights and privileges of the Ligetts Gap R. R. Co., incorporated under the Act of April 7, 1832, P. L. 316, and by the subsequent Act of April 14, 1851, P. L. 628, merged with appellant company, and that the charter of the earlier company contains no restriction as to the amount of land the company could appropriate. A reference to the char-

ter of that company shows that the power granted was in express terms limited to the appropriation of such land as was necessary for the exercise of the corporate franchise. The company was authorized "to occupy for that purpose (the building of its road) land which shall be necessary or suitable for the intended railroad." The act of February 19, 1849, gives exactly the same right, the only difference being that the latter defines expressly what are necessary and essential purposes. Certainly quite as much land was required for the construction of railroads and their operation in 1849 as in 1832. The limitation of the right to lands necessary for the intended road, fixed upon the earlier company the same burden that rests upon the appellant company when its right to take lands is challenged, of showing the necessity that requires it. The assignments of error on this appeal are overruled.

We have yet to consider the appeal by the defendant from the same judgment. The verdict was a recovery by the plaintiff of all the land in dispute except so much as had been occupied by the defendant's structures for more than the statutory period. The defendant claimed title to the entire lot by adverse possession. As we read the charge of the court it was a binding instruction to the effect that the defendant's evidence was not sufficient in law to overcome the plaintiff's written title except as to so much as was covered by defendant's improvements. The jury certainly so understood it. Was this error? We have examined the evidence with much care without being convinced that the instruction was erroneous. It lacks one essential—the possession shown was not exclusive. Certainly it was not of such a character as to put the plaintiff on notice. The circumstances suggest a permissive use rather than a hostile holding. The defendant's occupancy and use of the land was in some respects peculiar to itself, but nevertheless others used it for their own purposes with a like freedom. It was an open lot admitting of public travel upon and over it from all points. The public used it without restraint in hauling material for shipment from the

plaintiff's siding. The principal use of it by defendant was for storing lumber for like shipment. The evidence indicates strongly that the lot was regarded by the public as a common. Their use of it, concurring with that of the defendant, without let or hindrance, is wholly inconsistent with defendant's claim that it was during this period holding hostilely to the plaintiff. The assignments of error in this appeal are likewise overruled, and the judgment is affirmed.