## M. Lurio & Brother v. Pennsylvania Railroad Company.

*George T. Hambright* and *John E. Malone*, for plaintiffs.
*Zimmerman, Myers & Kready* and *Daniel G. Donoghue*, for defendant.

GROFF, J., April 19, 1930.—The pleadings in this case consist of a bill in equity filed on Aug. 23, 1929, and served on the defendant the same day. The said bill asked for a permanent injunction restraining the defendant from interfering with the plaintiffs' right to the use of a certain passageway described in the said bill, and such other relief as equity may require and the court may see fit. To this bill, an answer was filed on Sept. 21, 1929, admitting the facts alleged in certain paragraphs of the said bill, and denying the facts alleged in certain other paragraphs of the said bill.

There is but one issue raised in these pleadings, and that is, have the plaintiffs gained a right by adverse user to a certain alley or driveway located on defendant's property in the City of Lancaster, Pennsylvania, immediately in the rear of its depot and used in connection therewith?

606

1. The defendant is a corporation incorporated under the Act of Assembly of the State of Pennsylvania approved April 13, 1846, and found in the Pamphlet Laws of that year at page 312.

2. Section 2 of the said act provides:

". . . That said company shall not purchase or hold any real estate, except such as may be necessary or convenient for the making and constructing of said railroad, or for the furnishing of materials therefor, and for the accommodation of depots, offices, warehouses, machine shops, . . . and for the persons and things employed or used in or about the same. . . ."

3. Section 11 of the said act provides:

"That the president and directors of said company shall have power and authority by themselves, their engineers, superintendents, . . . . to survey, ascertain, locate, fix, mark and determine such route for a railroad as they may deem expedient, not, however, passing through any burying ground, or place of public worship, or any dwelling house without the consent of the owner or owners thereof; and not, except in the neighborhood of deep cuttings or high embankments, or places selected for sidings, turnouts, depots, . . . to exceed four rods in width; and thereon to lay down, erect, construct and establish a railroad, with one or more tracks. . . ."

4. That the said Pennsylvania Railroad Company did, by deed dated July 1, 1859, and recorded in the office for the recording of deeds in and for Lancaster County, at Lancaster, Pennsylvania, in Record Book W, volume 8, at page 400, acquire from James B. Lane and G. Taylor Lane, administrators of the estate of John N. Lane, deceased, a certain tract of land located in the City of Lancaster, to wit:

"All that certain House, called the 'Lancaster City Exchange', and other buildings thereto belonging, and Lot or piece of ground upon which they are erected, Situate in the City of Lancaster aforesaid, on the north side of the Pennsylvania Railway, and on the east side of North Queen Street; CONTAINING in front on North Queen Street, about fifty nine feet, one inch, more or less; and in depth two hundred and forty five feet, to a fourteen feet wide alley, upon which it contains, eighty one feet one inch more or less. BOUNDED on the north by the south wall of a two story Brick house and ground of Jacob McCully; on the east by said alley, on the South by the Pennsylvania Railway."

5. That at the time the said land was purchased by the Pennsylvania Railroad Company it was subject, on the northern border, to the use of an alley nine feet and five inches wide, and extending in depth of that width eastwardly from North Queen Street and along the northern boundary of the granted premises a distance of 60 feet.

6. That on Oct. 25, 1860, and recorded in the Recorder's Office of Lancaster County, Pennsylvania, in Record Book X, volume 8, at page 507, James T. McCulley and Sarah Jane McCulley, his wife, then being the parties owning the premises having a right to the use of the said alley, did release and forever quit-claim unto the Pennsylvania Railroad Company, its successors and assigns, for themselves, their heirs and any person claiming under them, all their right, title, interest, privilege and use of the said alley.

7. That the Board of Directors of the Pennsylvania Railroad Company, by a resolution passed June 29, 1859, "Resolved that the Pennsylvania Rail Rd. Company will locate and erect a building or depot for the accommodation of the passenger travel & other business on the line of their Road, on the plot of ground bounded by North Queen St. on the west and Chestnut St. on the

south, in the City of Lancaster," which described plot of ground included the ground over which the alley in controversy passes.

8. That in the years 1860 and 1861 the Pennsylvania Railroad Company constructed and erected upon the said premises a depot, located on the north side thereof; and for use in connection therewith established, between the station and its northern boundary, an alleyway of the width of fifteen feet three inches on North Queen Street, and gradually narrowing to the width of fourteen feet and six inches on North Christian Street.

9. That the said driveway and passenger depot have been used continuously from the time of the erection of the depot until the present time, by the Pennsylvania Railroad Company, for a depot and other purposes incidental to the operation of its railroad and for railroad purposes.

10. That the said alleyway was paved, cleaned and kept in repair by the Pennsylvania Railroad Company, through its employees, from the time it was laid out until the present time.

11. That in addition to the Pennsylvania Railroad Company using the said alley, it was used by the public generally for a passageway from Duke, or Christian, Street to North Queen Street, or the reverse, when the Christian and North Queen Street crossings were blocked by trains; and by the owners of the premises on the north, in gaining access to and from their premises, in common with the public and the Pennsylvania Railroad.

12. That at certain times during the period of the existence of the said alley, or driveway, the Pennsylvania Railroad Company would construct barriers across its ends and maintain them temporarily.

13. That there were numerous doorways and openings from the north side of the depot building into the said driveway, affording entrance and exit to and from the depot, to and from a restaurant established therein, to and from the cellar of the depot, to and from an apartment on the second floor of the said depot, and to and from the rooms used for storage of materials used by the defendant.

14. That the said alley was used for the purpose of hauling trunks to and from the said depot; for the purpose of hauling expressage to and from the express company's rooms, which occupied the northwest portion of the said building; for the purpose of taking material necessary to the maintenance of the said railroad to and from its storage place in the said depot; and for other necessary and convenient handling of the business of the said railroad and the entertainment of the traveling public.

### Discussion.

This bill in equity is brought by the plaintiff to restrain the defendant from closing up an alley on the north side of the Pennsylvania Railroad Station, in the City of Lancaster, Pennsylvania. In 1859 the company acquired a piece of land on the east side of North Queen Street, in this city, north of Chestnut Street, containing in front on said North Queen Street fifty-nine feet and one inch, more or less, and extending in depth eastward two hundred and forty-five feet to a fourteen feet alley, which is now known as Christian Street. This tract of land was immediately adjacent to the right of way which the Pennsylvania Railroad Company, after its incorporation by the Legislature of Pennsylvania on April 13, 1846, purchased from the State of Pennsylvania as a part of the public works of the state.

At the time this piece of land was purchased by the Pennsylvania Railroad Company, its board of directors passed a resolution to build a depot in the City of Lancaster, at the corner of North Queen and Chestnut Streets. In 1860 it started the erection of the depot on the land it had acquired as afore-

said, and completed the construction of the said depot in 1861. The walls then erected are the walls that are still standing, and mark the site of the abandoned depot in Lancaster City.

The actual erection of the depot was a dedication independent of the resolution passed by the board of directors of the land acquired, to actual railroad purposes, as it had a right to do, under its charter. Justice Stewart, in Delaware, Lackawanna & Western R. R. Co. *v.* Tobyhanna Co., Ltd., 232 Pa. 76, 85, said:

"What then will impress it [a piece of land] with a public use and bring it within the sanctity of right of way? We answer nothing but an actual dedication of the land to that use by so employing it, or other equally decisive act."

The company, under its charter, had a right to acquire land for a right of way not exceeding a certain width, and also such lands as were necessary for depots, water-tanks, etc. The piece of land purchased, as above described, could have been condemned for the purpose to which it was. dedicated. But the difficulty in this case arises, not from the use of the land actually occupied by the depot, but from the fact that at the time this depot was erected a road, or alleyway, approximately fifteen feet wide, was permitted to remain open between the station and the northern border of the land acquired by the railroad company.

From its depot building, into this alley, the railroad company constructed numerous doorways. One was used for the entrance and exit to and from the waiting-room; one was originally used for an entrance and exit to and from a lunch-room that occupied a portion of the station; one was used for the loading and unloading of baggage; and one was used for an entrance and exit to and from an apartment which was on the second floor of the depot building. Doorways entered from the alley or driveway into the cellar of the building, which was used for the storage of material, and the entrances from this alleyway were also used to gain access to the offices of the engineers, master mechanics and other employees of defendant company.

At the western end of the station was the North Queen Street crossing of the Pennsylvania Railroad, and at the eastern end of the depot was the fourteen feet wide alley, or Christian Street crossing, of the Pennsylvania Railroad. Trains pulling into the station blocked both these crossings, and the public would use this alleyway while the crossings were blocked in going from North Queen Street to Christian Street, thence to Duke Street, and *vice versa.* It was also used by the persons whose properties bordered the railroad ground, and the alley on the north in entering their premises with merchandise and teams. This alleyway was paved, kept in repair and kept clean by the employees of the railroad company, thus showing the absolute control and responsibility which the railroad company assumed in maintaining the same. It was as essential in maintaining and carrying out the purposes of the depot, the offices and the baggage and express departments in the building as the room in which the tickets were sold, and, in our opinion, was as essential to the railroad company in accommodating the public and in carrying out its purposes as the station itself was.

Now, could the plaintiffs, who own the property adjacent to the Pennsylvania Railroad Company on the north, acquire right by adverse user, through themselves and their predecessors in title, to this alley so as to exclude the railroad company from closing it? We think not. The railroad company had a right to acquire, under its charter, through condemnation or otherwise, real estate for right of way and depot purposes.

It was held in Reading Co. *v.* Seip, 30 Pa. Superior Ct. 330, that:

"A railroad is a public highway, and the land which it covers, whether acquired by the exercise of eminent domain or by purchase, is not the subject of adverse possession, and is immune from the statute."

We can see no distinction between the use of land purchased in this case and dedicated for the use of a station and a driveway as an approach to the same and land purchased and dedicated for the construction of switches adjacent to, and diverging from, its tracks.

In the case of Reading Co. *v.* Seip, above cited, the court, speaking through Judge Beaver, in the opinion, on page 335, said:

"Land taken by a railroad company for switches, turn-outs and sidings is for a public use. It is not the special use made of property taken which characterizes, but its convenient necessity to that part which is for the public use."

And, further, on the same page, the same judge said:

"What we now decide is that the land claimed by the defendant by adverse possession, having been purchased by the predecessors in title of the plaintiff for railroad purposes and having been used for the construction of switches adjacent to and diverging from its main track, was held by the said railroad for a public use, under the grant of its right of way, and that no title could be acquired by the defendant to the surface of any portion of what was used for such a purpose, by adverse possession, however long continued."

The Constitution of the State of Pennsylvania, article XVII, section 1, says: "All railroads and canals shall be public highways, and all railroad and canal companies shall be common carriers."

The land and alleyway in question, having been used for railroad purposes, would become a part of a public highway.

In Stevenson's Appeal, 17 W. N. C. 429, in speaking of a turnpike, the court said: "No title can be acquired against the public by user alone, nor lost to the public by non-user. A turnpike is a public highway."

It would seem to us that the rule of law set down by Shaw, C. J., in the case of William Kilburn et al. *v.* Jonathan S. Adams, 7 Metcalf (Mass.), 33, would apply here. It reads:

"The rule we think is, that where a tract of land, attached to a public building, such as a meeting house, town house, school house and the like, and occupied with such use, is designedly left open and unenclosed, for convenience or ornament, the passage of persons over it, in common with others for whose use it is appropriated, is, in general, to be regarded as permissive, and under an implied license, and not adverse. Such a use is not inconsistent with the only use which the proprietors think fit to make of it; and, therefore, until they think proper to enclose it, such use is not adverse, and will not preclude them from enclosing it, when other views of the interests of the proprietors render it proper to do so. And though an adjacent proprietor may make such use of the open land more frequently than another, yet the same rule will apply, unless there be some decisive act, indicating a separate and exclusive use, under a claim of right."

Again, in 1 Thompson on Real Property, § 463, we find:

"A right by prescription to pass through a way or alley, belonging to the owner of adjacent property and kept open for the owner's own use, or the use of his tenants, is not acquired by one who merely passes through it, and has continued to do so for many years, without doing an adverse act, such as making repairs or giving the owner any notice of a claim to pass over the alley as

a matter of right, as distinguished from a mere license or permission of the owner."

Our conclusion, therefore, is that the same rule of law applies where a party claims an easement in an alley or way by prescription as applies to the possession and ownership of land by adverse user or prescription.

The case of Delaware, Lackawanna & Western R. R. Co. *v.* Tobyhanna Co., Ltd., 232 Pa. 76, was a case where the railroad company had acquired a strip of land adjacent to its right of way 100 feet in width and 700 feet in length; that is to say, the ground used as its roadbed, with 50 feet of ground on either side of its center line. It acquired the same by conveyance, but as a separate tract. It was located on the western side of the railroad and was bisected by a public road, dividing it into two equal parts. The controversy was over one of these parts. The Tobyhanna Company, against whom ejectment had been brought, occupied a portion of this ground as a warehouse. The verdict was a recovery by the plaintiff of all the land in dispute, except so much as had been occupied by the defendant's structures for more than the statutory period. The defendant, Tobyhanna Company, claimed title to the entire lot by adverse possession. The court below gave binding instructions to the effect that defendant's evidence was not sufficient in law to overcome the plaintiff's written title, except as to so much as was covered by defendant's improvements. The Supreme Court, in reviewing this case, said:

"Was this error? We have examined the evidence with much care without being convinced that the instruction was erroneous. It lacks one essential— the possession shown was not exclusive. [In our case the user was not exclusive.] Certainly it was not of such a character as to put the plaintiff on notice. The circumstances suggest a permissive use rather than a hostile holding [user]. The defendant's occupancy and use of the land was in some respects peculiar to itself, but nevertheless others used it for their own purposes, with a like freedom. It was an open lot [alley] admitting of public travel upon and over it from all points. The public used it without restraint in hauling material for shipment from the plaintiff's siding. The principal use of it by defendant was for storing lumber for like shipment. The evidence indicates strongly that the lot was regarded by the public as a common. Their use of it, concurring with that of the defendant, without let or hindrance, is wholly inconsistent with defendant's claim that it was during this period holding hostilely to the plaintiff."

The judgment of the court below was affirmed. We feel that that is the exact principle involved in the case we are deciding.

A railroad company may lawfully acquire lands not strictly essential to the operation of its road, but which may conveniently and profitably be used in connection therewith; but it is only for the acquiring of such as are essential that the law makes provision by allowing the high franchise to be exercised for their procurement. These essentials are a roadway, not exceeding a given width, and sidings, water tanks, turnouts and depots. Therefore, we conclude that this alleyway, being essential to the maintenance and operation of its depot, and being continuously used in connection therewith, is brought within the class of property that is not subject to acquisition by adverse user. It was impressed with the public use and not to be interfered with. The railroad company's intention that it should never become impressed adversely with the right of others to use it is clearly and distinctly shown by the fact that from time to time it erected barriers across this right of way, excluding the public, the plaintiffs and their predecessors in title.

If any further citation is necessary to sustain our position, we think that the case of Delaware, Lackawanna & Western R. R. Co. *v.* Stroudsburg, Water Gap, etc., Street Ry., 289 Pa. 131, sustains our position.

Under all the evidence, this strip of land was as much impressed with the public use as if tracks had been laid over and upon it, thus devoting it to a plain and manifest use in an unmistakable way, which exempts it from becoming subject to the rights acquired by adverse user. This user was promptly cut off by the railroad company erecting the barriers complained of in the bill of injunction immediately when the station ceased to be used for railroad purposes.

We feel that the facts of this case are so plain and the law applicable thereto is so definite that a further discussion would be useless.

### Conclusions of law.

1. That property, even though acquired by purchase, when dedicated to actual use, either as a right of way or for depot purposes, cannot be acquired adversely by prescription or use after the lapse of time, however long.

2. That plaintiffs' use of the alley referred to in the bill in equity was a permissive use and did not ripen into a right by prescription.

3. That the railroad company had a right to erect and maintain the barriers which it did at either end of the alley complained of and to use the land occupied by the said alley, or way, as it saw fit after its station was abandoned.

### Decree.

And now, April 19, 1930, it is ordered and directed that the bill in equity filed in this case asking for an injunction be dismissed, at the costs of the plaintiffs. Bill dismissed.

From George Ross Eshleman, Lancaster, Pa.